T. J. BRUNER COMPANY, APPELLEE, v. FIDELITY & CASUALTY COMPANY OF NEW YORK, APPELLANT.

FILED DECEMBER 1, 1917. No. 19715.

1. **Insurance:** INSURANCE AGAINST BURGLARY: USE OF EXPLOSIVES. A burglar insurance policy indemnified the assured from loss by the stealing of property from a fire proof safe "by any person or persons who shall have made entry into the safe or safes by the use of tools or explosives thereupon." The outer doors had been locked by a combination lock, but there was no evidence of the use of tools or explosives thereupon. The steel inner doors which were locked by a key lock had been opened by the use of explosives. *Held,* that "entry into the safe" was made by the use of explosives, and that it was not material that the outer doors had not been so opened.

2. ——: ——: EVIDENCE. Evidence examined, and *held* to sustain a finding that no employee or servant of the plaintiff was criminally implicated in the burglary.

3. ——: ——: ——: BOOKS OF ACCOUNT. Certain minor errors and discrepancies were shown to exist in some of the books of the assured. These were called to the attention of plaintiff's manager at the trial and were corrected. *Held,* that they were not of such importance as to justify the forfeiture of the insurance on account of a provision of the policy that there should be no liability "unless books and accounts are regularly kept by the assured and the loss can be accurately determined therefrom by the company."

4. **New Trial:** REVIEW. The granting of a new trial is largely committed to the discretion of the trial court, and unless a clear abuse

has been shown this court will not interfere. *Grand Lodge, A. O. U. W. v. Bartes*, 69 Neb. 636.

5. Attorney and Client: FEES: REVIEW. A motion in the lower court to retax costs is unnecessary to review a judgment awarding an attorney fee in an action on an insurance policy. *American Fire Ins. Co. v. Landfare*, 56 Neb. 482.

APPEAL from the district court for Douglas county : LEE S. ESTELLE, JUDGE. *Affirmed.*

*Morsman, Maxwell & Crossman,* for appellant.

*J. C. Kinsler,* contra.

LETTON, J.

Plaintiff, a wholesale jeweler, procured from the defendant insurance corporation a burglary insurance policy. The material parts of this policy which apply to fire-proof safes are that the defendant agrees to indemnify the assured "for all loss—

"(A) In consequence of the felonious abstraction during the day or night from within' the safe or safes described in the schedule and located in the premises as hereinafter defined, by any person or persons who shall have made entry into the safe or safes by the use of tools or explosives thereupon," of money, securities and merchandise.

"(B) By damage to the said safe or safes, and to the said property contained therein, and to the premises, and to the office furniture and fixtures therein, caused by any person or persons while making or attempting to make entry into the safe or safes, or into any vault containing such safe or safes, by the use of tools or explosives thereupon."

It further provided that the company shall not be liable for any loss—

"(g) If any servant or employee of the assured, or any person lawfully upon the premises, is criminally implicated as principal or accessory in effecting or attempting to effect loss covered under this policy;

"(h) Unless books and accounts are regularly kept by the assured and the loss can be accurately determined therefrom by the company. * * *

"(1) From within any safe unless at the time of the occurrence of the loss the safe was properly locked by all combination locks on same."

The proof on the part of the plaintiff tended to show that on the evening of Sunday, May 23, 1915, the office rooms of the insured, which are located in an office building in the city of Omaha, were opened by the use of a chisel or jimmy near the latch, and the outer door of safe No. 4, which was locked with a combination lock, opened without the use of tools or explosives, and the double inner doors, which were locked with a key lock, blown open by an explosion, and diamonds and other property to the value of $3,357.91 feloniously abstracted; that this was discovered by the night watchman on beginning his rounds about 7:30 p. m., who immediately notified the plaintiff's manager, T. J. Bruner, and the police. Plaintiff at once gave notice of the loss to defendant, which denied liability and refused to pay for the loss. In its answer defendant denied that any person unknown to plaintiff made entry into the safe by the use of tools or explosives thereupon, and feloniously abstracted any property covered by the policy and damaged the safe. It pleads the conditions of the policy above set forth, and alleges that, if the plaintiff suffered any loss from said safe No. 4, access was not had by the use of tools or explosives upon the outside of the safe; that all the combination locks were not then locked; that the plaintiff has failed to keep proper books of account; and that the loss, if any, was occasioned and caused by some person or persons connected with plaintiff and being lawfully upon the premises, whose names are unknown to defendant. The reply is a general denial. The plaintiff recovered a judgment in the sum of $3,391.88. The court allowed the sum of $800 as attorney's fees and taxed the same as part of the costs. Defendant appeals.

A number of assignments of error are made. Defendant insists that the provision that the policy only insures against loss caused by "any person or persons who shall have made entry into the safe or safes by the use of tools or explosives thereupon" means the use of such instrumen-

talities upon the outside doors of the safe, and that the court erred in holding that it was only necessary to prove that the safe or some part of the safe was entered by the use of tools or explosives. This safe had double doors. Until the inner doors were opened no access could be had to its contents, and no entry made into the safe proper. Explosives were used upon the inner door. We think the district court was right in its construction of the language of the contract. *Fidelity & Casualty Co. v. Sanders*, 32 Ind. App. 448; *Mt. Eden Bank v. Ocean Accident & Guarantee Co.*, 96 S. W. (Ky.) 450.

It is next said that the court should have directed the jury to return a verdict for the defendant because Bruner, the manager of the plaintiff corporation, was the only man who knew the combination, and since the outer doors were opened in the ordinary way, and the chance of working the combination in an hour's time is one in several millions, the conclusion is inevitable that the safe was not locked, or else it was opened by Bruner. We think this conclusion is a *non sequitur*. There is evidence that such safes may be opened by experts by manipulation of the knob of the combination lock, and other evidence which is sufficient to support a finding by the jury that no employee was a participant in the burglary. The evidence on behalf of plaintiff is that Bruner left the office about 12:45 on Sunday afternoon and did not return until about 7 o'clock that evening when called by the night watchman. This man came on duty at 6 o'clock, and in making his rounds noticed some marks upon the office door and jamb indicating that the lock had been forced. On making an investigation he found that the outer doors of one of the safes were open, and that the inner doors had been blown open by an explosion. There were remains of a soap dam around the keyhole of the inner doors, and soap apparently had been used upon the flanges of the outer doors to confine the air and gases of the explosion and to silence the noise. The lock to the inner doors was broken, scattered and destroyed. A witness for defendant testified that he heard a sound like an explosion in the building between 1 and 2 o'clock in

the afternoon. Defendant argues that in all probability Bruner did not leave the building at 12 o'clock and go home to lunch, as he testified, but that he remained until after the explosion occurred, and virtually charges him with robbing the safe. The testimony of Bruner as to his movements is quite strongly corroborated by apparently disinterested witnesses. It was for the jury to determine what the actual facts were from all the evidence, and we are not able to say that they arrived at an erroneous conclusion.

Another assignment is that the plaintiff had not kept books from which the loss could be accurately determined. It is claimed that a memorandum book which listed the diamonds purchased, with their weight and cost, had a number of erasures and alterations in it. The testimony shows that when a diamond left the place of business, either when sold or upon approval, an entry was made in the margin of this book showing the disposition of the gem. Many of these entries were customarily made in pencil. Sometimes stones would be returned. Instead of making a new entry, the pencil memorandum would be erased, and when the diamond went out again a new pencil entry would be made. It developed upon the witness-stand that some mistakes had been made with reference to the description and disposition of some of the stones listed as having been stolen. The jury were instructed by the district court that such items should not be charged against the defendant insurance company, and that certain discounts which it was shown by cross-examination of Bruner had been received on certain articles should also be allowed defendant. These mistakes were in small proportion to the amount of the loss. It is shown that full sets of double-entry books of account had been kept since the business was begun, and these, with cash book, sales books, invoices and inventory taken January 1, 1915, were produced to the defendant long before the trial. We are of opinion that the provision of the policy mentioned should not be construed so strictly as to forfeit the insurance on

account of the minor mistakes or discrepancies in the diamond record.

The district court instructed the jury that plaintiff admitted there were errors in the account amounting to $39.39, and that discounts had been taken amounting to $106.83, for which plaintiff could in no event recover: The court further instructed the jury in substance that, before the plaintiff could recover the burden of proof was on it to prove by a preponderance of the evidence: (1) That the safe was feloniously entered by the use of tools or explosives; (2) that the property described in the petition was in the safe and was stolen therefrom; (3) the value of the property stolen; (4) that the safe was properly locked; "(5) that plaintiff kept books of account from which the loss could be accurately ascertained; (6) that no employee or servant of the assured, and no person or persons lawfully on the premises, was implicated as principal or accessory in the burglary: If plaintiff has so proved all the above facts, then your verdict should be for the plaintiff. If plaintiff has failed to so prove all the above facts, then your verdict should be for the defendant."

The defendant argues that in its opening statement to the jury it asserted its reliance upon the violation of the conditions that there should be no recovery if the combination lock was not locked at the time of the entry; and that no recovery could be allowed unless the assured kept books of account from which the loss could be accurately ascertained, and complains that these two defenses were "improperly and indiscriminately included and commingled in a general instruction;" that the refusal to give specific instructions upon these points deprived it of its right to submit to the jury its theory of the case. The district court had correctly instructed the jury upon each of these points and it was unnecessary to restate the law. The instructions, taken as a whole, are pertinent, clear and concise, without unnecessary repetitions or involved language, plain to the understanding of the average man.

The next assignment of error, and that which is perhaps most earnestly argued, is that a new trial should have been

granted on account of newly discovered evidence. The motion for a new trial filed in the district court alleges that one of the attorneys for the defendant had many conversations before the trial with Ada James, bookkeeper for the plaintiff, concerning the alleged burglary, but was unable to obtain the facts set forth in her affidavit from her; that after the trial an affidavit was made by Mrs. James in substance as follows: That she became connected with the Bruner company in 1914 when the company opened for business in its present location; that she had charge of the books; that at several times during her employment she made entries in the books at Mr. Bruner's directions with reference to the sales and credits which were incorrect, more especially with reference to the sale of certain jewelry for which a victrola was taken in part payment, and of an automobile for which a diamond was taken out of the stock and given as part of the purchase price, as well as a number of smaller items for which no proper charge was made; that she first mentioned these items for which no proper charge was made in September, 1915, after the burglary, when she spoke to Riggs, Jr., one of the stockholders; that after the trial, at the annual meeting of the company, at which she was not present, she understood that these items were called to Bruner's attention, and that she personally knows that since the meeting an arrangement has been made whereby Bruner is to pay into the treasury of the company $50 a month to cover things which he has taken and which have never been charged; that after the meeting Bruner made it unpleasant for her, and for that reason she left the employment of the company; that on the morning after the buglary Bruner suggested they had better make a list of the losses, and that this was made, a copy of which is the original claim list given to the insurance company. Before the list was made, at Bruner's instructions, she made entries in the stock books of the salesmen showing the return of certain goods which were not in the safe at the time of the burglary, but were in the traveling men's trunks; that though they inquired as to the books she did not tell plaintiff's attorneys about the en-

tries. Counter affidavits were filed to the effect that Mrs. James had stated to plaintiff's attorneys that she kept the books herself, knew they were absolutely correct, and that the records would show that all the diamonds claimed to have been stolen were stolen. There are also affidavits by each of the three salesmen denying specifically and in detail the statements that part of the property claimed to have been stolen was at the time of the burglary in their trunks or traveling cases. Riggs, Jr., to whom Mrs. James made certain charges of irregularity against Bruner, deposes that he and the other stockholders made a careful investigation of the books, and of the charges made by Mrs. James, and that they found all of the charges of irregularity to be wholly unfounded; that Bruner's conduct was approved, and at the annual meeting it was voted to increase his salary, to give him a vacation, and to allow him $200 additional pay; that he and the other stockholders were fully cognizant of the purchase of the automobile and the manner of payment, and of the procurement of the accident insurance and the payment for the gasoline used in the machine, and that all these matters were fully sanctioned and authorized. He further states that an examination of the books has been made since the filing of Mrs. James' affidavit and the charges of irregularities in the entries are wholly unfounded and untrue. The affidavit of the senior Riggs, who it was stated is the principal stockholder in the company, is to the same effect. Mr. Bruner also files an affidavit, stating that the charges made by Mrs. James were false, and denying specifically and in detail a number of statements made in her affidavit. Attached to Mr. Bruner's affidavit are photographic copies of certain books mentioned in the affidavit of Mrs. James. These exhibits seem to bear out the denials made by Mr. Bruner.

Where charges of such serious moment and grave import are made against parties interested in an action, the district court should scrutinize the evidence in support of the charges or in denial thereof with great care, and should

take particular pains to see that no fraud or deceit has been practiced upon the court or jury. Most of the persons making the affidavits were present in court during the trial. Several of them were witnesses, and the district judge had an opportunity to see and observe their conduct and listen to their statements. It would be impossible for him in considering the affidavits to disassociate his mind from the impressions he received at the trial. Indeed, it would be undesirable that he should do so. Among the strongest aids to the ascertainment of truth are the inflections in the language, the demeanor, appearance, and expression of the countenance of witnesses. There are other indicia of veracity which cannot easily be explained, but of which every judge of experience is aware. The affidavit of Mrs. James, when met by the counter affidavits of the other affiants, failed to convince the district judge that a fraud had been perpetrated as alleged by her. The granting of a new trial is largely committed to the discretion of the trial court, and unless a clear abuse has been shown this court will not interfere. *Grand Lodge, A. O. U. W. v. Bartes,* 69 Neb. 636.

The trial court allowed a fee of $800 to plaintiff's attorney, which is assessed as costs, and which is complained of as excessive and unauthorized. The plaintiff argues that a motion to retax costs was necessary, and that although one was filed it has never been acted upon by the district court, and hence cannot be reviewed. In *Hartford Fire Ins. Co. v. Corey,* 53 Neb. 209, and *American Fire Ins. Co. v. Landfare,* 56 Neb. 482, it was held that a motion in the lower court to retax costs is unnecessary to review a judgment awarding an attorney fee in an action on an insurance policy. The fee allowed is nearly 25 per cent. of the recovery and seems excessive. It seems to us that a fee equal to 10 per cent. of the judgment is as much as should be taxed as costs, and the allowance is reduced to that amount.

In conclusion, while there is a possibility that the safe might have been opened in the manner charged by the

defendant, and while there are some matters in the evidence which are not entirely satisfactory, the preponderance of the testimony supports the verdict of the jury, and the action of the trial court in overruling the motions for a new trial. The judgment is

AFFIRMED.

SEDGWICK, J., not sitting.