The court gave the charge on circumstantial evidence in the following terms:

"In order to warrant a conviction upon circumstantial evidence, each fact necessary to establish defendant's guilt must be proven by the evidence to the satisfaction of the jury beyond a reasonable doubt; all such facts must be consistent with each other, and with the defendant's guilt, and all the circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the defendant committed the offense charged, and must exclude every other reasonable hypothesis, except that of the defendant's guilt."

There were no affirmative defenses submitted. The charge was excepted to, because there was a failure to instruct the jury that if they believed from the evidence, or if they had a reasonable doubt thereupon, that any other person than the appellant killed the deceased, or if the circumstances did not exclude the idea that another person killed deceased, then to acquit him. A similar exception was taken because the court failed to instruct the jury to acquit if they believed that Eb Johnson killed the deceased, or if the circumstances did not exclude the theory that he did so. Special charges were requested by the appellant in line with these exceptions, and were refused by the court. We think the law entitled the appellant to have the jury instructed affirmatively upon his defensive theory. There was presented the theory that Eb Johnson was the murderer; also that the shot was fired by some one of the unidentified parties, who were shown to have been in the proximity of the homicide. Defense also presented the affirmative theory that the homicide must have been the result of the act of some one else; the appellant being at a place remote from the scene of the homicide, rendering his participation impossible. There was no specific exception to the charge complaining of the failure to submit the defense of alibi. It was manifestly in the case, and the failure to submit it emphasizes the force of appellant's contention that the court was in error in failing to amend his charge in response to the exceptions and special charges, so as to direct the mind of the jury definitely to the theory presented by the evidence that the offense was committed by another and not the appellant. See Wheeler v. State, 56 Tex. Cr. R. 548, 121 S. W. 166; Taylor v. State, 81 Tex. Cr. R. 359, 195 S. W. 1149.

This error, in our opinion, requires a reversal of the judgment, which is ordered.

---

## NATIONAL SURETY CO. v. MURPHY.
### (No. 8203.)

(Court of Civil Appeals of Texas. Dallas. Oct. 18, 1919.)

1. INSURANCE ⚖══665(4)—SUFFICIENCY OF EVIDENCE IN ACTION ON BURGLARY POLICY.

In an action on burglary and theft policy, evidence *held* sufficient to warrant a finding that articles disappearing from plaintiff's residence were taken by burglars or thieves without his consent.

2. INSURANCE ⚖══635—PLEADING IN ACTION ON BURGLARY AND THEFT POLICY SUFFICIENT TO COVER LOSS BY THEFT.

In an action on burglary and theft policy, an allegation that property was feloniously abstracted from the interior of plaintiff's residence was sufficient, especially when not challenged by demurrer, to cover a loss by theft, as distinguished from burglary.

Appeal from Dallas County Court; W. L. Thornton, Judge.

Action by M. Murphy against the National Surety Company. From a judgment for plaintiff, defendant appeals. Affirmed.

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Brooks, Worsham & Grayham, of Dallas, for appellant.

Cockrell, Gray, McBride & O'Donnell, of Dallas, for appellee.

TALBOT, J. Appellee, Murphy, sued the appellant, National Surety Company, to recover the sum of $1,000 alleged to be due under the terms of an insurance policy issued to appellee, whereby the appellant undertook and agreed to indemnify appellee against loss from burglary, theft, or larceny of any of the property described in the schedule attached to said policy, for the term of 12 months beginning on the 10th day of July, 1917, at noon and ending on the 10th day of July, 1918, at noon. The appellant answered by general demurrer and general denial. The case was tried before the court without a jury, and judgment rendered in favor of the appellee for the sum of $1,000, together with interest at the rate of 6 per cent. per annum from date of judgment. Appellant's motion for rehearing having been overruled, it appealed.

The only assignment of error presented is that the testimony introduced "is insufficient to sustain a judgment herein against the defendant in this, to wit, 'The plaintiff failed to prove the essential elements of either burglary, theft, or larceny necessary to constitute a recovery herein, and the policy sued on not covering any loss for anything except loss by burglary, theft, or larceny, the testimony is insufficient in law to sustain the judgment rendered herein and the court erred in not so holding.'" The proposition presented is as follows:

"Where an insurer issues its policy of insurance in favor of an insured covering direct loss by burglary, theft, or larceny, in order to warrant a recovery by the insured against the insurer under the terms of said policy, the insured must prove every element necessary to constitute the crime or offense of burglary, theft, or larceny, and a failure to prove all of said elements, constituting either burglary, theft, or larceny, plaintiff is not entitled to recover against the defendant."

The sufficiency of the appellee's pleading was not questioned upon the trial. A general demurrer was filed, but it does not appear that it was presented to the court and acted upon. Appellee alleged, in substance, that on July 10, 1917, in consideration of $10 paid by appellee to appellant as a premium thereon, appellant issued to appellee its policy of insurance, whereby appellant contracted and agreed to indemnify appellee in the sum of $1,000 for the term of 12 months beginning July 10, 1917, and ending July 10, 1918, for direct loss by burglary, theft, or larceny, of any of the property described in the schedule mentioned therein; that among the various articles of property mentioned in said schedule were watches, jewelry, precious stones and their settings, articles made of gold and silver, wearing apparel, and other personal effects common in residence generally, located in the building used as plaintiff's private residence at 3503 Hall street in the city of Dallas, Tex.; that about November 13, 1917, plaintiff's residence was entered and burglarized by some person to plaintiff unknown, and there was feloniously abstracted from the interior of said residence of plaintiff the following articles of property of the respective net actual cash values at the time of the robbery: One diamond shield of the value of $1,200; one diamond ring of the value of $400; one gold watch of the value of $50; one diamond pin of the value of $50; one pearl handled revolver of the value of $10—the aggregate value of which was $1,710. Appellee further alleged proper and timely notice to the appellant of such loss and prayed for judgment against appellant for $1,000.

[1] The policy of insurance declared on was introduced in evidence, and showed that appellant thereby insured appellee as alleged against loss from burglary, theft, or larceny, of the property charged to have been taken from appellee's residence, "occasioned by its felonious abstraction from within the interior of the house——by any domestic servant or employé of the assured, or by any other person or persons, excepting any person whose property is insured hereunder; and, for direct loss by damage to said property and to said premises caused by burglars and thieves." The appellee did not testify in so many words that his house was entered without his consent, or that the property charged to have been abstracted therefrom was taken without his consent. Nor is there any direct testimony that the windows and doors of appellee's house were closed at the time the house was entered. He did testify, however, as follows:

"My name is M. Murphy. I live at 3508 Hall street. I am the M. Murphy who was insured under policy No. 739927 in the National Surety Company. At the time that policy was issued I was the general agent for the National Surety Company. About the 12th or 13th of November last year I was called home by my wife. I got home about 5 o'clock p. m. My wife had been absent from home. On my arrival my wife was greatly excited. When I went into the house I found that the bed was littered over with the contents of my desk and my suit case was filled with stuff, evidently intended to be taken away—with things in general, including my clothing, collars, razor, and strap. My other effects had all been taken out and spread out in another room, and a lot of it had been taken away. The desk in the room was broken open, and the contents scattered around, and the things described in here (indicating proof of loss made to National Surety Company) were all taken away. A revolver was also taken. The razors and razor strap and a cake of Ivory soap and some clothes—a tie and some collars

and other things in the grip. The drawers of the desk were broken open. It looked like some iron instrument had been used to open the desk. There were marks on the desk and on a door which looked as though an iron instrument such as an ice pick had been used to open them. The articles mentioned in the schedule which you now show me were taken from my house at that time. The articles taken were one diamond shield, one diamond ring, one gold watch, one small diamond pin, one pearl handled revolver. This schedule which I now have is a copy of that which I furnished to the company with the exception of my signature."

Appellee also introduced in evidence, seemingly for all purposes and without objection, a copy of the proof of loss furnished appellant shortly after the alleged burglary or theft of his property. In the schedule of articles claimed to have been taken from his house, all of the items of property mentioned in his petition and mentioned in his testimony above were set forth. In the proofs of loss furnished appellant, appellee stated that the "burglar evidently entered back door with skeleton key and closed the door behind him." He further stated in said proofs of loss in substance, among other things, that the house from which his property was taken was occupied by him as a residence, and no person other than himself occupied any part of it; that the occurrence of the burglary or theft was first known to him about 6 o'clock p. m. on the 12th day of November; that he notified the insurance company thereof at its home office or its agent at Austin by letter on the 13th day of November; that the burglary or theft did not originate by act, design, or procurement of appellee, or in consequence of any collusion, fraud, or evil practice done or suffered by him; and that nothing was done by him or with his consent to violate the conditions of the issuance. The testimony was undisputed that the value of the property lost by the burglary or theft alleged was in amount greater than the face of the policy.

We have thus very fully stated and quoted the material testimony in the case, with conclusion reached that it is sufficient to authorize and support the judgment rendered in appellee's favor. The authorities to which our attention has been called, and of which we have knowledge, do not seem to require the same quantum of proof to support a recovery under a policy of the kind sued on as is required to support a conviction under an indictment for theft or burglary. Neither the case of National Surety Co. v. Silberberg Bros., 176 S. W. 97, nor the case of National Surety Co. v. Redmon, 173 Ky. 294, 190 S. W. 1081, cited by appellant, determine that such quantum of proof is necessary. Indeed, in the first case mentioned, the Court of Civil Appeals for the Eighth District of this state held, as argued by appellee, that the evidence therein presented was sufficient to support

the judgment rendered on a policy more exacting in its terms regarding the technical proof required, than the policy involved here, though the evidence introduced was no more conclusive on the question of theft and burglary than the evidence attacked in the present case as being insufficient to authorize a recovery. In the second case mentioned, the plaintiff sued to recover on a policy of insurance indemnifying him against loss by burglary, theft, or larceny of diamond stud. He predicated his recovery on a loss by burglary alone, and the only proof of burglary were marks on one of the screens to the house and footprints on the roof, discovered some three weeks after the alleged loss of the diamond stud. In holding that the evidence was insufficient to take the case to the jury, the court said:

"While it may be true that a loss followed by physical evidence of an entrance from the outside of the premises on the occasion of the loss may be sufficient to justify the inference of loss by burglary, and therefore to take the case to the jury, we are not prepared to say that marks on a window screen and footprints on a roof, discovered three weeks after the loss, are sufficient for that purpose. The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made upon remote inferences. * * * Here no reasonable connection between the established facts and the loss itself is shown. The evidence merely presents a few circumstances about which one might theorize as to the cause of the loss. Any conclusion that the loss occurred by burglary would be mere conjecture, and conjecture affords no sound basis for a verdict."

Such is not, we think, the character of the evidence in the present case. The testimony of the appellee is to the effect that, when he arrived home on the day his property was taken from his house, he discovered marks on one of the doors of the house which looked as though an iron instrument, such as an ice pick, had been used to open it. This was a fact or circumstance from which the court trying the case might infer an entry into the house by force and without the consent of appellee.

[2] But appellee did not base his entire case on the claim of burglary alone. The allegations in his petition that the property was "feloniously abstracted" from the interior of his residence is sufficient, especially in the absence of a demurrer challenging its sufficiency, to cover a loss by theft, and its effect is not changed by the further allegation that appellee's residence was on the occasion in question burglarized. The case of Great Eastern Casualty Co. v. Boli, 187 S. W. 686, is not referred to in appellant's brief, and probably was overlooked. In that case the appellee sued to recover the value of a diamond stud alleged to have been stolen, and the loss covered by a policy of insurance

issued by the appellant. The policy provided that the company should insure the appellee against loss from burglary, theft, or larceny, and stipulated that "mere disappearance of property shall not be deemed sufficient evidence of burglary, theft, or larceny." The question for decision was whether the appellee sufficiently proved, as a jury question, the loss of the diamond stud within the purview of the provisions of the policy. The appellee testified, as shown by the report of the case, that on Saturday night, May 9, 1914, according to his custom, he took the diamond stud out of his necktie, placed the same on the chiffonier in his room, and next morning he discovered the loss of the same, on search. He said he remembered distinctly taking the stud from the tie and examining it under the electric light in his room to see if the prongs were intact, and if the diamond needed cleaning, as he intended to clean it next morning. The next morning, as he went to place his collar and cuff buttons in his shirt, he noticed that the stud was gone. This was the only testimony that the loss of the diamond stud was by burglary, theft, or larceny and the court held this testimony sufficient to take the question to the jury, and differentiated the case from Duschenes v. National Surety Co., 79 Misc. Rep. 232, 139 N. Y. Supp. 881, relied on by the appellant, in which a recovery upon somewhat similar facts was denied on the ground that in the latter case the insurance provided that—

"The assured shall also produce direct and affirmative evidence that the loss of the article or articles for which claim is made was due to the commission of a burglary, theft, or larceny; the disappearance of such article or articles not to be deemed such evidence."

After pointing out that the decision of the New York court was evidently based upon that provision of the policy just quoted and which required that the insured produce not circumstantial but direct and affirmative evidence that the loss of the article for which claim was made was due to the commission of a burglary, theft, or larceny, the court in Great Eastern Casualty Co. v. Boli, supra, said:

"The present policy and the one quoted from in the case cited, as will be readily seen, present a marked difference as to the quantum of proof necessary to establish theft, and, unless the clause, 'mere disappearance of property shall not be deemed sufficient evidence,' negatives the sufficiency of the proof, we think, upon the evidence, the cause was subject to submission to the jury. By process of elimination the New York Case, supra, could be considered an authority against the contention of appellant. It is noted that the court said: 'At most, the plaintiff has submitted evidence which shows that the piece of jewelry has disappeared under circumstances that might perhaps permit an inference that it was stolen.' If that be true,

the controlling point in that case must have been influenced by the clause requiring that the assured should produce direct and affirmative evidence that the loss of the article was due to the commission of a crime. We think the clause in this particular policy, that mere disappearance should not be deemed sufficient evidence, is merely the statement of a general truth; however, disappearance of the diamond under the conditions stated by appellee, after having been placed upon the chiffonier by him in the evening and missing therefrom the morning thereafter, would not constitute a 'mere disappearance' exempting the insurer from liability. If appellee's testimony is to be believed, and the jury resolved it, the inference is reasonably deducible, as we think the New York court really admitted that the property disappeared under circumstances exhibiting loss by a criminal act, sufficiently proven as at common law, though in the New York case not sufficiently established, measured by the quantum of proof contracted for in that policy."

The facts and circumstances shown in the case before us are at least as strong and cogent in support of the court's judgment as were the facts and circumstances in support of the judgment rendered in the case from which we have just quoted, and we believe they are sufficient to support the judgment. The inference from them that appellee's house was entered by force, without his consent, and his property taken therefrom, or that if entered without force appellee's property was fraudulently taken without his consent and without the consent of any one holding the same for him, is not remote. It is not true, we think, that "any conclusion that the loss occurred by burglary or theft would be mere conjecture." On the contrary, a reasonable connection between the established facts and the loss itself is fairly shown. These facts fully appear from our quotations and statement of the evidence. When appellee reached his home in response to a call from his wife, he found her greatly excited. He found marks on the door which indicated that some iron instrument had been used to open it. The desk in his room had been broken open and the contents scattered around. His suit case was filled with articles including clothing, razor, and strap, ready to be taken away, and other personal effects had been spread out in another room and portions of his personal effects, including the articles involved in this suit, had been taken away. Aside from the proofs of loss introduced in evidence, the circumstances were sufficient to show that the entry into appellee's house and the taking of his property was without his consent. But in making the proof of loss which was required of him, by appellant, he swore in effect that the entry into his house and the taking of his property "did not originate by any act, design or procurement on his part or consequence of any collusion, fraud, evil practice done or suffered by him, and that nothing

had been done by or with his privity or consent to violate the conditions of the insurance."

The judgment is affirmed.