CHARLES DERR ET AL., APPELLANTS, V. WILLIAM KIRKPAT-
RICK, APPELLEE.

FILED JULY 7, 1921. No. 22081.

1. **Master and Servant: WORKMEN'S COMPENSATION: ATTORNEY'S FEES.** When an employer appeals to the district court from an award of the compensation commissioner and fails to reduce the amount of such award, the employee's counsel is entitled to the allowance of a reasonable attorney's fee for services in the district court. Section 3666, Rev. St. 1913, as amended, section 4, ch. 91, Laws 1919.

2. ———: ———. **REVIEW.** When the evidence in, a case that is brought under the employers' liability act conflicts with respect to material matter, the judgment will not be disturbed if there is sufficient evidence in the record to support it. *Lincoln Gas & Electric Light Co. v. Crowley*, 104 Neb. 701.

3. **New Trial: DISCRETION OF COURT.** The granting of a new trial is largely committed to the discretion of the trial court, and unless a clear abuse has been shown this court will not interfere. *Bruner Co. v. Fidelity & Casualty Co.*, 101 Neb. 825.

4. **Master and Servant: WORKMEN'S COMPENSATION: ATTORNEY'S FEES.** Where an employer in an action brought under the employers' liability act appeals from the judgment of the district court to this court and fails to reduce the amount of the recovery, this court will, on application, allow the employee's counsel a reasonable attorney's fee. Section 3666, Rev. St. 1913, as amended, section 4, ch. 91, Laws 1919.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*J. Ralph Dykes,* for appellants.

*Clifford L. Rein, contra.*

Heard before MORRISSEY, C.J., ALDRICH, DAY, DEAN, FLANSBURG and ROSE, JJ.

DEAN, J.

This suit originated in the compensation commissioner's office, where William Kirkpatrick, defendant, filed an application for an order against Charles Derr, his em-

ployer, and the Maryland Casualty Company, the employer's surety, the plaintiffs herein, to enforce continued payments of $15 a week, as compensation, theretofore paid by plaintiffs, for disabilities sustained by defendant, April 10, 1920, in the course of his employment while working for Derr in his furniture house as helper, clerk and repair man. January 12, 1921, the hearing was concluded and defendant was awarded $15 a week from December 3, 1920, to the date of the hearing. The award further provided that the payments should continue for a period of five additional weeks after the hearing and that during that period defendant should submit to medical treatment at plaintiffs' cost. It was further ordered that another hearing be had at the expiration of the five-weeks' treatment period that the commissioner might then determine the extent of defendant's disability and make such award as the facts would warrant. Both parties complied with this order. When the parties again appeared after the expiration of the five-weeks' medical treatment, the commissioner found that the disability continued and that its extent could not then be fully determined. Thereupon it was ordered that plaintiffs continue the payment of compensation at $15 a week from the date of the last payment as long as the disability remained. Plaintiffs being dissatisfied with the final award of the commissioner appealed therefrom to the district court.

The district court found that defendant's disability began April 10, 1920, and that "the duration of such disability cannot now be determined." The court thereupon rendered a judgment against plaintiffs compelling them to pay defendant $15 a week from February 3, 1921, "until said disability be ended or determined." Plaintiffs having failed to reduce the amount of the commissioner's award, the court allowed defendant $50 as an attorney fee. From the judgment so rendered plaintiffs appealed.

Kirkpatrick testified in substance: That the accident happened April 10, 1920, when under Derr's direction he went with a fellow employee to a private residence in

Lincoln to bring therefrom a base-burner stove, weighing 500 or 600 pounds, to be stored in Derr's warehouse; that the stove was in a middle room, and the two men alone carried it out through the front room, over the porch and down the steps; that on account of mud they could not use the stove truck, and had to carry the stove over the lawn and through the mud to the truck, a distance of 60 feet from the house; that they lifted the stove a foot or 18 inches to the bed of the truck; and that by carrying the stove and straining himself in lifting it up to the truck he was in some way injured and immediately became sick and faint; that when they returned he was unable to help carry the stove into the store because of his injury; that he then went home and the next day was ill, and on the following day he returned to the store, but that owing to the pains that he suffered he was unable to do any work; that he was then sent home in a truck by his employer, where he suffered pain for about five weeks, when "this ailment startd in the back" of each of his hands and persisted up to the time of the trial so that he could not then close his hands; that he has performed no work since the day of the accident and is unable to feed himself or to dress or undress himself; that he received payments as compensation in the sum of $630, and that $200 hospital bills were paid by plaintiffs; that the payments so made included the time to February 3, 1921, when further payments were refused by plaintiffs.

Mr. Turner is the man who helped Kirkpatrick to carry the base-burner from the dining room and load it on the truck. He testified that it weighed about 600 pounds. His testimony corroborates generally that of the defendant. He said: "Q. Do you know what is the usual thing for truck or teamsters to pick those things up by hand or to drag it on a truck? A. If we have got sidewalk or flooring you take a truck and haul them, but if you have nothing but ground you cannot wheel the trucks; you have simply got to pick it up and carry it. * * * Q. Now, when you got this stove out to the truck, did

you have to lift up on it any to get it into the wagon? A. Yes; had to raise it between 16 and 18 inches. Q. That is, had to pull it up in addition to carrying it to the truck? A. Yes, sir. You see, to carry a base-burner, you have got to catch hold of the stovepipe hole, and reach down and catch the ash-pan, and reach the door board, and push against one another and carry in this position. So it is a strain all through your neck, body and arms. After you get to the wagon, we had to kind of up (indicating) like this, and put it in the end. To do that, you have got to have a pretty good stomach on you or you cannot do it. * * * Q. Now, what did Mr. Kirkpatrick do as soon as you folks set that stove down on the floor of the truck? A. On the floor of the truck? Q. Yes. A. Well, he was right by the corner of the wagon and kind of leaned up against the wagon like this. 'Gosh,' he says, 'I have tore myself all to pieces.' Q. That is what he said? A. It seemed like he relaxed all over." With respect to the carrying of the stove, he further testified that "it hurt me for two or three days, my neck, * * * my wife and I, I took the truck and we drove out to see him (Kirkpatrick) and he was in bad condition, * * * Mr. Derr and I talked and said we are afraid Kirk is going to make a die of it. Mr. Derr and I were just talking in the store."

Defendant was examined by a physician about three weeks after the accident. On the part of defendant he testified that he found Kirkpatrick "suffering from violent strain with evidence of over strain of the abdominal muscles and hydrocele of the cord. Q. What history did he give you? A. Of having lifted a weight too heavy for him, and having broken down under it, having lifted a stove too heavy to carry;" and further that there was no indication of rheumatism, but that he "suspected that hydrocele of the cord was a rupture, and we watched him carefully to see whether we could handle it without an operation. I believe I threatened him with an operation for a while—finally managed without it. Somebody kept him at rest in bed and gave him things to ease the pain.

\* \* \* Q. Now, you may state whether or not, in your professional opinion, the high increased temperature and bronchial pneumonia found there might have been aggravated by the effects of the strain in lifting that he complained of, or might have predisposed him to take such disease as that? A. I think you will find it a very common thing in medical works that lowered resistance will predispose a patient to any kind of infection anywhere in the body." The doctor further testified that he had the patient under observation for several months, and that he examined him from time to time and there was no doubt in his mind but that Kirkpatrick's condition was brought about by the excessive strain in carrying the stove. On the cross-examination he testified: "Q. How did the infection get in the hand and fingers? A. Circulating in the blood stream to the hands. \* \* \* Q. Doctor, one more question. You said the hydrocele of cord disappeared, or had disappeared, June 17; wasn't it, you said, hydrocele of cord practically disappeared under medical treatment June 17? A. It must have been about that time. Q. Then the only condition you found at that time was this condition in the hands? Yes, sir."

Plaintiffs argue that the accident never happened. There is also some argument to the effect that defendant's condition arose from an abnormal condition of his teeth and that he was afflicted with pyorrhea. Defendant called a dentist on this point, and from his testimony it appears that the condition of his teeth was not abnormal and that there was but a trace of pyorrhea, "in the first stages," and that it was not sufficient to injuriously affect his health; that two of his large molars were decayed and removed. We conclude that plaintiffs' argument on this point is not sustained.

Only two witnesses testified on the part of plaintiffs and both were physicians. They did not examine defendant until about seven months after the accident. Plaintiffs in their brief say: "The medical testimony is conflicting." We do not find that it conflicts at all points; but, even ad-

mitting that plaintiffs' statement reflects the fact, in the present state of the record, it is not incumbent on us to discuss the evidence if there is sufficient to support the judgment. The medical testimony seems to be ample to support defendant's contention and under the rule we will not discuss it further. *Manning v. Pomerene,* 101 Neb. 127; *Miller v. Morris & Co.,* 101 Neb. 169; *Anderson v. Kiene,* 103 Neb. 773; *Lincoln Gas & Electric Light Co. v. Crowley,* 104 Neb. 701.

Plaintiffs contend that the court erred in not granting a new trial on their motion. In *Bruner Co. v. Fidelity & Casualty Co.,* 101 Neb. 825, we held: "The granting of a new trial is largely committed to the discretion of the trial court, and unless a clear abuse has been shown this court will not interfere." Abuse of discretion has not been shown. Error does not appear in the ruling.

It is argued that the district court erred in allowing defendant an attorney fee of $50 for services in that court. We do not think so, in view of the fact that the employer appealed and failed to obtain any reduction in the amount of the award. Section 3666, Rev. St. 1913, as amended, section 4, ch. 91, Laws 1919, provides that, whenever "proceedings are had before the compensation commissioner, a reasonable attorney's fee shall be allowed the employee by the court in the event the employer appeals from the award of the commissioner and fails to obtain any reduction in the amount of such award; the appellate court shall in like manner allow the plaintiff a reasonable sum as attorney's fees for the appellate proceedings." Under the act defendant's counsel is entitled to a fee of $100 for his services in this court and this amount is ordered to be paid by plaintiffs.

From the facts before us we conclude that defendant is entitled to compensation at the rate of $15 a week from the time the court found that plaintiffs ceased paying compensation, namely, from February 3, 1921. We hold, however, that the record discloses such reasonable grounds for controversy that the appeal was justified. It there-

fore follows that plaintiffs are not subject to the statutory "waiting time" penalty.

The judgment of the district court is

AFFIRMED.