## NATIONAL SURETY CO. v. CHALKLEY. (No. 7118.)

(Court of Civil Appeals of Texas. San Antonio. March 5, 1924. Rehearing Denied March 26, 1924.)

1. **Insurance** ⊜⇒425—Loss by breaking inner compartments of safe held recoverable although no signs of force on outside of safe.

Where property in a safe was obtained by breaking into the house and actual breaking by force and violence of the inside compartments of the safe, insured could recover under policy against loss by abstraction from within the safe by one making entry into the safe by actual force and violence "of which force and violence there shall be visible marks made upon such safe," although there was no sign on the outside of the safe to indicate forcible entry.

2. **Insurance** ⊜⇒146(3)—Contracts construed against insurer.

Since policies of insurance are formed by the companies who insert their own complicated and in some instances obscure and oracular conditions, insured is given the benefit of any doubt in construction.

3. **Insurance** ⊜⇒539(4)—Notice of loss held furnished "forthwith."

Where notice of loss of money and jewels on July 15th was given July 17th, Sunday having intervened, and notice of damage to the safe and door was waived by insurer's agent, such notice of loss conformed to policy requirement as to notice "forthwith."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forthwith.]

On Motion for Rehearing.

**4. Insurance ⟨⟩425—Defense to burglary policy held technical; "technical error."**

Defense to safe burglary policy that the safe was not broken into because the outer door was not broken, although several locks were broken on inner doors, *held* a technical defense; "technical errors" meaning merely abstract and practically harmless errors (citing Words and Phrases, First Series, "Technical Error").

Appeal from Bexar County Court for Civil Cases; McCollum Burnett, Judge.

Action by J. S. Chalkley against the National Surety Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Ernest L. Early, of Austin, and Douglas, Carter & Childers, of San Antonio, for appellant.

Templeton, Brooks, Napier & Brown and J. R. Locke, all of San Antonio, for appellee.

FLY, C. J. This is a suit by appellee against appellant to recover the sum of $589 alleged to be due on an insurance policy against burglary, the allegations showing that unknown persons had burglariously entered a building possessed by appellee and had stolen cash and jewelry amounting to $501.50, and had damaged a door and safe in the sum of $87.50. Appellant defended on the ground that actual force and violence had not been used in obtaining entrance to the safe and that appellee did not forthwith, or within a reasonable time, furnish proofs of loss. A jury was waived, and after hearing the facts the court rendered judgment in favor of appellee for $603.20.

The store was entered, the safe opened, and the money and jewelry therein stolen on the night of July 15, 1922, the following day being Sunday, and the notice of the loss of that property was given in writing on July 17, 1922. It took some time to ascertain the damages to door and safe and notice of that loss was given in writing on May 23, 1923. However, the agents of appellant were notified of the loss on July 17, 1922, and told appellee that as they had received proof of loss of the money and jewels, damage to door and safe could be made later; and the adjuster told appellee that absence of that proof of loss would make no difference. We think the testimony was sufficient to justify the trial court in finding that the safe was broken into and the property described abstracted therefrom. The court found from sufficient testimony:

"The said safe consisted of a large steel outer door, and inside this door it was divided into compartments, consisting of several wooden drawers with locks thereon and one large steel compartment with a lock thereon, and at the time of the said burglary all of said drawers and said compartments were duly and securely locked."

[1] It is contended that the proof did not bring the burglary within the terms of the contract which are as follows:

"For all loss by burglary of money, securities and merchandise as hereinafter defined, by its abstraction from within that part of any safe or vault to which insurance under this policy applies, by any person or persons making entry into such safe or vault by actual force and violence, of which force and violence there shall be visible marks made upon such safe or vault by tools, explosives, electricity, gas or other chemicals, while such safe or vault is duly closed and locked and located in assured's premises described in warranties, or located elsewhere after removal therefrom by burglars."

A city detective swore:

"There was not any doubt about the fact but what somebody broke into the shop, nor was there any question about the fact but what they had broken out the drawers and compartment on the inside of the safe; they were broken. Yes, I found the instrument they were broken with; that is, they showed me the instrument. It was a jimmy. They had been locked apparently, and all the compartments and things were scattered over the floor. They consisted of some drawers and one steel or metal compartment, and all of them had been pried open."

The witness also swore:

"I saw no sign whatever on the outside of the safe to indicate any forcible entry into the safe."

No mention is made of a burglar-proof safe, in that part of the policy which insures appellee, and there is nothing mentioned in connection with the force in entering the safe being made from the outside of the safe. The "special provisions," section 8, apply only to burglar-proof chests in burglar-proof safes, and the provision in section 9, as to the force being applied to the "exterior" of the safe, has reference only to fireproof safes or vaults. The application for the insurance described the safe and showed that it was not burglar proof. Appellant knew exactly what kind of safe was used by appellee and knew that it was not burglar proof.

The evidence did not show how the outer door of the safe was opened, and the court could not have found that it was done with a key or by manipulation, even if such finding had been requested by appellant, which was not done. The evidence showed that the property in the safe was obtained by an actual breaking into the house and an actual breaking by force and violence of the inside compartments of the safe, and appellant should not be permitted to evade its liability by a technicality which under the facts of this case is absolutely unjustified. The

house was broken into, the safe was entered, the inner locks broken, and the property taken, and under a reasonable construction of the terms of the policy appellee is entitled to a recovery.

[2] Insurance companies form their own policies, use their own language, except when compelled by a legislature to use a standard policy, insert their own complicated, and in some instances obscure and oracular, conditions, and courts uniformly give the insured the benefit of any doubt in the construction of the terms used in such policy. Without such liberality of construction the insured person would have a perilous journey to traverse in obtaining insurance money. So, in the construction of language of policies in burglary cases, similar to the language in the policy under consideration, great liberality is shown. As said in National Surety Co. v. Silberberg (Tex. Civ. App.) 176 S. W. 97, a case in which the appellant in the present case was seeking to evade payment of burglary insurance along the same lines pursued at this time:

"No forced construction is permissible, but the sense in which the words were used must be arrived at in the light of the surroundings of the parties, to arrive at the intention they had when used. The construction must have for its object indemnity for the insured, and any fair interpretation of the policy that will give indemnity must be adopted, and every ambiguity must be resolved in favor of the insured."

In other words, the language of a policy must be construed so as to convey the intention of the parties, and not for the purpose, so often resorted to in matters of diplomacy, to conceal the thoughts and intentions. This is the uniform rule in Texas. Brown v. Insurance Co., 89 Tex. 590, 35 S. W. 1060; National Surety Co. v. Murphy (Tex. Civ. App.) 215 S. W. 461.

That the terms of this policy as to the force and violence used in abstracting the property from the safe are fully met by the evidence is sustained by decisions of other states. In the case of Columbia Casualty Co. v. Rogers, 29 Ga. App. 248, 114 S. E. 718, a Georgia court held that—

"A felonious entry into the safe effected by 'tools, explosives, electricity, or chemicals directly upon' any part of the safe exterior to the cavity holding the contents of the safe, providing all doors were equipped with the kind of locks provided for in the policy, and at the time of the felonious entry into the safe were properly closed and locked, is such a felonious entry as is insured against by the policy."

The policy in that case was very similar to the one in this case.

In the case of Fidelity Co. v. Sanders, 32 Ind. App. 448, 70 N. E. 167, the court held:

"If the money or property in the safe is reached through the use of tools or explosives upon any part of the safe, the loss is covered by the policy."

We think that case declares the law and is peculiarly appropriate to this case.

In the case of Bruner v. Fidelity & Casualty Co., 101 Neb. 825, 166 N. W. 242, the policy indemnified the insured against loss of property from a safe "by 'any person or persons who shall have made entry into the safe or safes by the use of tools or explosives thereupon,'" and the evidence showed that no tools or explosives were used on the outer door of the safe. The inner doors, however, locked by keys, had been opened by explosives, and the Supreme Court of Nebraska held:

"This safe had double doors. Until the inner doors were opened no access could be had to its contents, and no entry made into the safe proper. * * * We think the district court was right in its construction of the language of the contract."

The party occupying the place, which would be that of appellant in Texas. as well as in most courts, was in reality the party who won in the trial court, and it would seem that Nebraska styles the cases on appeal just as they were styled in the trial court regardless of who triumphed there. There may be decisions in other state courts not in harmony with those cited, and with our opinion of the law, but if so they will not be followed by this court.

[3] We are of opinion that the notice of the loss of the property was given in strict conformity to the terms of the policy, and that notice of the damages to the safe and door was waived by the agent of the appellant.

All of the assignments are overruled, and the judgment will be affirmed.

### On Motion for Rehearing.

[4] It was not intimated by this court in its former opinion that counsel had been unreasonable in the defenses presented for their client, and we fail to see the sarcasm in the statement that "appellant should not be permitted to evade its liability by a technicality which under the facts of this case is absolutely unjustified." It was intended as a plain proposition based on the facts without the least touch of sarcasm. No reflection was intended upon counsel who have the right to use technicalities to aid their clients, but such use will not preclude courts from commenting on the evasion of liability through a technicality on the part of the client. This court finds nothing in the definition of technicality in standard dictionaries that should cause feeling or resentment upon the part of counsel when the word is used to describe a defense made by a client. Webster gives no offensive meaning to the word, and Words and Phrases, First Series, says a "technical error" means "merely abstract and

practically harmless errors." There is nothing in that definition that is offensive, or that should arouse any feeling on the part of counsel. We say this in order to remove any suggestion of offense in its use by this court. We still think, without intending sarcasm or offense, that the defense that the safe was not broken into because the outer door was not broken, although several locks were broken on inner doors, was a technical defense which the facts did not justify.

The motion for rehearing is overruled.