## Miller *v.* Massachusetts Bonding & Insurance Company, Appellant.

*Insurance—Insurance against theft—Construction of policy—Case for jury.*

A provision in a policy of insurance against theft, that: "The assured shall also produce direct and affirmative evidence that the loss of the article or articles for which claim is made was due to the commission of a burglary, theft, or larceny; the disappearance of such article or articles not to be deemed such evidence," does not preclude a recovery, although the evidence of the theft is purely circumstantial, and where there is evidence from which the jury might infer that the property had been feloniously taken, the case is properly submitted to the jury and a verdict and judgment for plaintiff was sustained.

Argued Oct. 20, 1914. Appeal, No. 106, Oct. T., 1914, by defendants, from judgment of C. P. Allegheny Co., July T., 1912, No. 2931, on verdict for plaintiff, in case of Mortimer C. Miller v. Massachusetts Bonding & In-

surance Company. Before FELL, C. J., BROWN, MESTRE-
ZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a policy of insurance. Before EVANS, J.
The facts appear by the opinion of the Supreme Court.
Verdict for plaintiff for $3,025.31 and judgment there-
on. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict
for defendant and in refusing to enter judgment for de-
fendant n. o. v.

*Stephen Stone,* of *Stone & Stone,* for appellant.

*William M. Hall,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 2, 1915:
The action was on a policy of insurance against direct
loss of the property described in the schedule attached,
occurring by its felonious abstraction from the interior
of the building, apartments, or rooms wholly occupied
by the assured. The property, for the loss of which the
action was brought, consisted of various articles of per-
sonal jewelry. Evidence was introduced by plaintiff to
show the circumstances connected with their disappear-
ance, which it is claimed excluded other theory than that
the property had been lost by theft. The particulars of
the evidence need not here be recited. At the close of
plaintiff's case defendant moved for binding instruc-
tions; the motion was overruled and the case was sub-
mitted to the jury, with the result that a verdict was
rendered for the plaintiff for the full amount of the
claim. A motion for judgment non obstante followed,
which in turn was also denied. The ground on which
binding instructions were asked, and on which the
motion for judgment rested, was the insufficiency of the
evidence submitted to meet the requirements of a clause
in the policy which reads as follows:

"The assured shall also produce direct and affirmative evidence that the loss of article or articles for which claim is made was due to the commission of a burglary, theft or larceny; the disappearance of such article or articles not to be deemed such evidence."

Appellant's contention is that the evidence adduced by plaintiff to show the felonious taking of the property was wholly circumstantial, and that conceding the sufficiency of the evidence in ordinary case to warrant an inference of theft, yet because here the agreement of the parties required for the establishment of this material fact on which defendant's liability was made dependent, evidence direct and affirmative, of the former of which there was none, binding instructions should have been given. This contention gives to the words "direct and affirmative evidence" a meaning so severely technical that if this meaning alone can be given them, a policy containing the provision we have here, would avail the assured only in the rarest and most exceptional cases, so exceptional that the average person would hardly think the contingency in which the policy could operate worth guarding against. Theft may not be described as a deed of darkness, yet it is notoriously one which is rarely, if ever, attempted except as the thief has reason to believe that he will be undiscovered in the act. He never invites any one unless it be a confederate, to witness the operation. To limit the assured's right to recovery to cases where the corpus delicti can be proved by direct testimony, that is, by the testimony of witnesses who saw the actual taking, would make the policy next to valueless. We will not impute to the defendant company any such purpose in the use of these words; nor can we assume that the assured understood them in this narrow and restricted sense, in view of the marked subtraction such construction would necessarily make from his security. Stated plainly, what is contended for is, that the factum probandum being the felonious taking of the property, this could only be established by the testi-

mony of one or more witnesses who were present and saw the theft or larceny actually committed; or it may be stated thus, that the parties intended by the words to exact a higher degree of proof to charge the company with liability for the loss, than the law requires to convict the burglar or thief of the crime itself. Admitting that the evidence here was circumstantial, if adduced on the trial of one charged with the theft and found sufficient to exclude all reasonable doubt with respect to the guilt of the party charged, conviction would follow, and imprisonment, and yet, with the guilty one in jail, the evidence would be insufficient for a recovery on the policy, because the thief convicted and in jail had not been seen when perpetrating the crime. We are unwilling to believe that the parties intended by the language used to accomplish such absurd results as those pointed out, and which would necessarily follow were the strict technical construction contended for allowed. Technical terms are ordinarily, but not always, to be given their technical meaning; where they are obviously used in a different sense it is the intention that governs. Just what the parties understood by direct and affirmative evidence may not be clear; but of this we feel very certain, they did not employ these words with a view to render the policy frivolous and ineffective. And it would be both were it enforceable only as some one could be produced who had seen the thief at his work. A reasonable construction of the words would ascribe to the parties the single purpose to require something more than the mere fact of loss to entitle the assured to recovery on the policy. The fact that the clause concludes with a provision that the disappearance of the property should not be deemed direct evidence, is an indication, more or less strong, that the word "direct" was not used in its strictly technical sense. The provision might well have been omitted had the technical meaning been intended, since under no circumstances could the fact of disappearance been regarded as direct evidence, under-

stood in its technical sense, of the theft. An examination of the evidence shows that while circumstantial it was all distinctly affirmative as to the different facts testified to. Each witness testified as to what he saw for himself, and all the testimony was received without objection. The trial judge in his charge very distinctly instructed the jury that the one question they had to pass upon was whether the property had been feloniously taken. Their answer that it was so taken should have made an end of the case. The effect of a provision in a policy of insurance conditioning recovery on the production of a particular kind of evidence in contradistinction of another kind, which, under the rules of law and evidence, is equally effective and admissible to prove the particular fact in issue, suggests a question that was not raised in the court below, nor argued on the appeal. It therefore calls for no consideration here.

The assignment of error is overruled and the judgment is affirmed.