PETER ROSENBACH, Appellant, v. NATIONAL FIDELITY & CASUALTY CO., a Corporation, Respondent.

St. Louis Court of Appeals. Submitted on Briefs April 7, 1920. Opinion Filed May 4, 1920.

1. INSURANCE: Burglary and Fire Insurance: Policy Construed Most Favorable to Assured. The most favorable construction must be given to contracts of insurance in favor of the assured, the insurer writing the policy.

2 ———: ———: Theft From Safe Inside Main Safe: Covered by Policy. A burglary insurance policy which provided that indemnity should be paid for loss of money or property from a combination fire and burglar-proof safe or fire-proof safe with burglar proof chest unless the same should have been abstracted from the steel or so-called burglar proof chest contained within the safe, after entry into said chest effected by the use of tools or explosives directly thereupon, *held* that the policy covered the loss of money taken from the inner or cash safe inside the main safe, the door to that inner safe being opened by force, although that of the outer safe was not opened by force, but either by working the combination or by reason of the combination having been off.

3. ———: ———: Failure of Insured to Keep Account of Money in Safe: Imaterial. In an action on a burglary insurance policy insuring against the burglary of a safe which was tried on an agreed statement of facts, the fact that it did not appear that the plaintiff had kept an account of the money he had in the safe was immaterial, in view of the fact that the agreed statement of facts set out exactly how much money was taken.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Rhodes E. Cave,* Judge.

REVERSED AND REMANDED.

*Frumberg & Russell* for appellant.

(1) Where entry into a safe is effected by the use of tools upon one of the outer doors, and money is

204 Mo. App. 10.

feloniously abstracted from the money chest within the safe, which money chest is also opened by the use of tools, the insurer is liable upon a policy indemnifying against loss of money feloniously abstracted from the the money chest after entry into said safe by the use of tools or explosives and after entry into such money chest by the use of tools or explosives. First National Bank v. Maryland Casualty Company, 121 Pac. 321; Fidelity & Casualty Company v. Sanders, 32 Ind. App. 448. (2) Where there is no dispute as to the amount of the loss, it is immaterial whether or not plaintiff complied with the provision of the policy requiring the keeping of accounts. Leiman v. Metropolitan Surety Company, 111 N. Y. Supp. 536.

*J. P. McCammon* and *R. J. Balch* for respondent.

REYNOLDS, P. J.—Defendant issued to plaintiff a combination fire and burglary insurance policy for $1000, on a safe belonging to plaintiff, for the term of one year. At the expiration of a year it was renewed for another year. The safe was located in plaintiff's premises in St. Louis. In the schedule annexed to the policy it is stated that inside of the safe there was what is called a "burglar-proof chest" with a lock key. There was a combination lock on the outer door of the safe. The policy provided for insurance against the direct loss by burglary of money, etc., "in consequence of the felonious abstraction of the same by burglars from the safe or safes, described in the schedule and located in the office or storeroom actually occupied by the assured, also described in said schedule, and hereinafter called the premises, *after entry into such safe or safes by such burglars effected by the use of tools or explosives directly thereupon,* and for direct loss by damage to said merchandise, or to said safe or safes or to the furniture, fixtures or premises caused by such burglarious entry, or an attempt thereat."

Among the special agreements in the policy it is provided that indemnity shall be paid, *"For loss of*

*money or property from a combination fire and burglar-proof safe or fire-proof safe with burglar-proof chest unless the same shall have been abstracted from the steel or so-called burglar-proof chest contained within the safe, after entry into said chest effected by the use of tools or explosives directly thereupon.''* It was further provided in the policy that the company was not liable for loss of money unless it belonged solely to the assured, nor if the accounts of the assured were not so kept that the actual loss could be accurately determined therefrom.

Setting up the terms of the policy and averring that while the policy was in force, plaintiff suffered a direct loss by burglary of $450 in money, ''in consequence of the felonious abstraction of the same by burglars from the safe described in said policy, . . . after entry into such safe by such burglars effected by the use of tools directly thereupon,'' judgment is prayed for that amount, together with interest from January 25, 1916, and for ten per cent. of the amount for vexatious and wilful refusal to pay the loss, and for a reasonable attorney's fee.

The answer, after a general denial, sets up the terms of the policy we have quoted, averring that the $450 mentioned in the petition were not abstracted from the safe mentioned in the petition, after entry into such safe by such burglars, effected by the use of tools or explosives directly thereupon, and that the entry into the safe was not effected by such burglars by the use of tools or explosives, and the further averment that the accounts of the assured were not so kept that the actual loss could be accurately determined therefrom. To this the usual reply was filed.

A jury being waived, the cause was tried before the court on a statement of facts in which it was agreed that defendant is an insurance corporation, engaged in writing burglary and other insurance, authorized at the time to do business within this State; that plaintiff was engaged in the saloon business at 1014 N. Garrison Avenue, in the

city of St. Louis, and has been so engaged at all times since February 13, 1914; that plaintiff took out the policy for the consideration of $10, the policy being delivered to him, and on February 10, 1915, it was renewed for another term of one year, carrying it to February 13, 1916, and that it was in full force and effect on the 24th and 25th days of January, 1916. The terms of the policy and schedule appearing by those instruments were considered as in evidence under the agreed statement. It was further agreed:

"That on the night of January 24, 1916, plaintiff personally closed his place of business, and early the next morning received a report that his place had been burglarized during the night. The manner in which access was obtained to the safe and money chest was as follows: The outside door, which locked with a combination, had been opened without the use of tools or explosives thereon; the plaintiff had either neglected to lock the door by the combination (contrary to his usual custom) or the burglars were able to work the combination; inside the door last mentioned was a steel door which locked with a key, and this lock was driven through the door by the use of tools and the door was opened in this way. Still farther inside the safe was a small money chest with a steel door which locked with a key lock. This lock was driven through the door by the use of tools and the door was then opened.

"After the outer door with the combination lock had been opened without the use of tools or explosives, and the inner safe door was opened by the use of tools, and the money chest was opened by the use of tools, there was stolen from the money chest $20 in silver change, halves and quarters, $50 in one-dollar bills and $380 made up of five, ten and twenty-dollar bills. Some articles of jewelry were also taken, but they were not covered by the policy."

It was also agreed that plaintiff gave defendant proper notice and proof of loss on January 25, 1916, and that defendant, after investigation, refused to make any settlement of the alleged loss.

Rosenbach v. Fid. & Cas. Co.

The reasonable value of an attorney's fee was left blank and it was agreed that this statement, the policy and schedule, and the depositions attached constitute all the evidence in the case, upon which it was submitted to the court.

The depositions taken were those of plaintiff, two or more policemen and plaintiff's barkeeper. That of plaintiff, describing the safe, of which there were photographs introduced and which are before us, was to the effect that inside of the safe was a compartment—a strong box; that the safe was what is called a combination fire and burglar-proof safe, that is to say a fire-proof safe with a burglar-proof chest inside of it. The safe was burglarized about the night of January 24-25, 1916. The amount taken from it was about $450 in paper money and silver, also two watches and a couple of little rings. Asked how he ascertained the amount of money in the safe, plaintiff testified, under examination by defendant, that he figured it up in the afternoon of the day before. There were fives and tens in paper money to the amount of about $380 and the rest was $50 worth of single dollars. Asked if he had a memorandum or book showing this he said that he put the items on a piece of paper, which he had in the safe; had figured the amount out before the burglary; had often carried as high as $2500 in the safe; knew what he had in the safe; remembered it and had made memoranda from day to day but had not kept them; kept no books, just slips of paper.

The testimony of the other witnesses was to the effect of the condition of the saloon. The policeman told what they had observed in passing there during the night, and except the position of a shade and chair and inner door, noticed nothing unusual. The barkeeper testified that he had gone to the place and opened the saloon about 5 o'clock on the morning of the 25th; discovered the safe open, a lot of papers on the floor, and the furniture and other contents of the safe and the adjoining room scattered about and in confusion. He touched nothing,

and disturbed nothing, but called the police, and when they came he sent for plaintiff, the proprietor.

The testimony of all the witnesses was to the effect that the back door on the premises was open, plaintiff testifying that he had locked it the night before. All the witnesses testified that there were no marks, in the way of scratches or indications of force or use of explosives on the outer door of the safe; it had been opened without the use of tools or explosives. The inner safe door had been opened by the use of tools. This was a steel door immediately inside of the outer door, covering the whole space, and separated from the outer door by an inch or more. Inside of this steel inner door was the money chest, with a steel door which had been opened by the use of tools, and it was from this chest that the money had been stolen. Plaintiff himself testified that his custom was to throw the combination on the safe when he closed at night, which, on the night in question, was about half past one, and while he was not prepared to swear positively that he had thrown it that night, his best recollection was that he had done so. A door in the rear of the premises, leading into a yard between which and the alley there was a high board fence, was open.

At the conclusion of the submission of the agreed statement of facts and the evidence accompanying it, plaintiff asked the court for two declarations of law, the first reading:

"The court declares the law to be that the felonious abstraction of money from the safe of plaintiff after entrance into the money chest of said safe has been effected by the use of tools, is within the terms of the policy of insurance offered in evidence in this case, where tools were used upon the inner steel door of said safe and also upon the steel money chest, notwithstanding the fact that the outer door of said safe was opened without the use of tools or explosives."

The second declaration was to the effect that if the court found the facts to be that "on the 24th day of January, 1916, there was feloniously abstracted from

the safe of plaintiff described in the policy of insurance four hundred and fifty dollars, the property of plaintiff, after entry into said safe had been effected by burglars by the use of tools thereupon; that plaintiff has complied with all the terms and conditions of said policy, and that defendant has refused to pay the loss without just or reasonable ground for such refusal." The declaration then proceeds:

"The plaintiff is, therefore, entitled to judgment in the sum of four hundred and fifty dollars, with interest at the rate of six per cent per annum from the 24th day of January, 1916, to date; and is further entitled to damages because of the vexatious refusal of defendant to pay said loss, in the sum of forty-five dollars, and is further entitled to recover a reasonable attorney fee, which the court finds to be the sum of $——."

It may be stated that there was no evidence of the value of the attorney's fee offered.

We think the first declaration asked by plaintiff should have been given.

We do not find that the question here involved has ever been directly decided by the courts of our State, the cases nearest approaching it which we have found, or to which we have been referred by counsel, are Frankel et al. v. Massachusetts Bonding & Ins. Co., reported 177 S. W. 775, and Goldman v. New Jersey Fidelity & Plate Glass Ins. Co., 183 S. W. 709, neither to be officially reported.

In the former case the language of the policy was to the effect that it furnishes indemnity to plaintiff for direct loss by burglary of money in current use, etc., in consequence of the felonious abstraction of the same from the safe, "by any person or persons who shall have made entry into such safe or safes by the use of tools or explosives applied directly to the outside thereof." That is not the language of the policy before us, as will be seen by the material parts of it which we have quoted.

In the Goldman Case, supra, while the language of the policy was substantially identical with that employed in the policy before us, the only question in decision was as to whether there was any evidence to show that tools had been used in effecting entry into the body of the safe. That, the Kansas City Court of Appeals held, was a question for the jury.

Turning to the decisions outside of our State, to which we are referred by counsel, is First National Bank of Monrovia v. Maryland Casualty Co., 162 Calif. 61. This, in a way, may be said to be the converse of the proposition we have before us. There the policy insured against loss by burglary, limiting the liability of the insurer to a loss accomplished through entry into the bank's safe by use of tools or explosives directly thereupon, or in the event that the property stolen was taken from the inner chest contained in the safe, through a loss accomplished through entry into said chest also by use of tools or explosives directly thereon, and the Supreme Court of California held that the insurance company was not liable for a loss by burglary of property taken from the inner chest where the entry thereto was effected by moving the combination of its locks, a knowledge of which had been surreptitiously acquired by the burglars while making repairs on the safe, notwithstanding entry into the outer safe was made by the use of tools directly upon that safe. In short, the liability, it was there held, arose from force used on the safe out of which the money was stolen, and in that case, while force was used on the outer safe, no force was used in obtaining entrance into the inner safe in which the money was itself contained.

Fidelity & Casualty Co. v. Sanders, 32 Ind. App. 448, was a case in which it appeared by the allegation of the petition that burglars had broken into a safe by working the combination and lock on the outer door of the safe, and then and there, by the use of tools and force, broke into the money drawer on the inside of the safe by breaking the lock thereon and extracting

said drawer from the safe, taking therefrom money. This, the Indiana Appellate Court held, shows a loss within the provisions of the policy indemnifying plaintiff for loss of money in consequence of the felonious abstraction of the same by burglars from the safe or safes described in the schedule, after entry into said safe or safes by such burglars, effected by the use of tools or explosives directly thereon. The Indiana Court construed the policy to mean that if the money, or property in the safe was reached through the use of tools or explosives upon the part of the safe where the money was kept, the loss was covered by the policy. That seems to meet the case at bar.

Learned counsel for respondent cites us to Blank v. National Surety Co., 181 Iowa, 648. In that case the burglars entered the room in which the safe, which had a combination lock on the outer door, was kept. Inside were two small wooden boxes or drawers, locked with keys. After entry into the safe by means of working the combination on its outer door, the ends of the wooden boxes or doors were broken off and the money and checks contained therein taken. The Supreme Court of Iowa held that the policy of insurance against loss by burglary only attached liability provided entrance into the safe itself was effected by means of the use of tools or explosives directly thereupon, and does not cover a loss by burglary when entrance into the safe is effected by successfully working the combination of lock on the outer door and then applying tools to break into the inner money drawers. There the terms of the policy were that the company was liable, ''For direct loss by burglary of any of the property described in paragraph 'A' from the safe or safes described in the schedule, located at the premises of the assured, by, any person or persons who shall have made entry into such safe or safes by the use of tools or explosives directly thereupon.'' The language there used is not precisely the language used in the policy before us, and we are not disposed to here accept the conclusion of the court in that case.

It is a familiar rule of construction of contracts, and especially of insurance contracts, that the most favorable construction is to be given to the policy in favor of the assured, the insurer, as here, writing the policy.

In this view of it, and in view of the terms of the policy and the facts present, we are of the opinion that the policy here before us covers the loss of this money taken from the inner or cash safe inside the main safe, the door to that inner safe being opened by force, although that if the outer safe was not, as far as appears opened by force, but either by working the combination or by reason of the combination having been off. It seems to us very clear that in the contemplation of this insurance and its peculiar kind, this was exactly what was intended to be covered. This was a combination fire and burglar-proof safe, and the inner door and the door to the inner chest were essential for the protection of the contents against burglary. It was these inner compartments which were broken open by force, and it was from there that the money was stolen. Under this construction of the policy we think that the first declaration of law asked by the plaintiff should have been given.

The second, as worded, was properly refused. If the first is given, one properly covering the remaining issues can be given.

Complaint is made by learned counsel for respondent that it did not appear that the plaintiff had kept an account of the money he had in the safe. In view of the fact that the agreed statement of facts set out exactly how much money was taken, we think that is immaterial. [Leiman v. Metropolitan Surety Co., 111 N. Y. Supp. 536.] There it is said that this condition is for the protection of the insurer against an excessive claim and where the amount of loss sustained is not in dispute, as here, it is immaterial as to whether plaintiff kept an account of it.

For the reasons stated, the judgment of the circuit court is reversed and the cause remanded for such further proceedings, in accordance with the view here expressed as may be thought proper.

*Allen* and *Becker, JJ.,* concur.