No. 27,025.

RALPH SOWDEN, *Appellee*, v. UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. BURGLARY AND THEFT INSURANCE—*Affirmative Proof of Larceny—Circumstantial Evidence.* A clause in a policy insuring against a loss by theft that affirmative proof must be made of the larceny to warrant a recovery does not prevent the establishment of that fact by purely circumstantial evidence.

2. SAME—*Affirmative Proof of Larceny—Sufficiency of Evidence to Go to Jury.* In an action upon such a policy a submission to the jury of the question whether insured jewelry had been stolen was warranted by evidence that it was left at night upon the top of a chiffonier and was gone in the morning, that none of the persons known to be in the house or having a right there had taken it or knew anything about it, that it was never heard of again by the owner, and that an outside door of the house had been unlocked all night.

3. SAME—*Proof of Loss—Waiver of Defects.* In an action on a theft insurance policy it is held that the making of sufficient proof of loss to the company was admitted and that in any event the proof made was sufficient.

4. SAME—*Instructions.* In such an action it is held that an instruction complained of was not prejudicial.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed January 8, 1927. Affirmed.

*James A. McDermott,* of Winfield, for the appellant.

*Albert Faulconer, Kirke W. Dale* and *C. L. Swarts,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: The United States Fidelity and Guaranty Company issued to Ralph Sowden a policy insuring him against the loss of certain property by burglary, theft or larceny. He brought this action against the company alleging the loss by theft and larceny of a diamond ring worth $375 and two earbobs worth $150, covered by the policy. He recovered judgment and the defendant appeals.

The policy included this provision:

"Affirmative proof of loss or damage under oath on forms provided by the company must be furnished to the company at its home office in Baltimore, Md., within sixty days from the date of the discovery of such loss or damage."

Burglary and Theft Insurance, 9 C. J. pp. 1098 n. 50, 1099 n. 71, 1100 n. 83; 46 L. R. A. n. s. 567; 41 A. L. R. 847; 44 A. L. R. 472; 14 R. C. L. 1270.

The proof of loss furnished to the defendant was made by the writing in of answers to printed questions on a prepared blank. The principal contention of the defendant is that at the trial there was an entire lack of affirmative evidence, or of substantial evidence, that the insured property was stolen.

1. The wife of the plaintiff testified to this effect: The last time she saw the ring and earbobs was the night of July 5, 1923, at their home. She was packing her things to go to Colorado. She left by automobile on the morning of July 6, taking her two children, three and ten years old, and her maid. The occupants of the house were those indicated, and another family consisting of a husband and wife, who lived in an upstairs room. The arrangement of the house was described in full detail. The door of the back porch was not locked, nor was the screen door hooked, because of the maid being out. The inside doors were not locked. When the packing was practically finished and the plaintiff had gone to bed, the witness, being afraid to travel with the ring and earbobs, seeing his bunch of keys on top of a chiffonier, where he was in the habit of placing them, put the ring on the keys and the earbobs beside them, thinking he would be more apt to see them there, and that the chiffonier, which was in a large room adjoining a sleeping porch where the family slept, was high enough so that the children could not reach them. She intended to tell him about them. She got up between four and five o'clock the next morning, called the maid, got the children up, ate breakfast and got into the car. She did not observe whether the jewelry was on the chiffonier. There was a rim around the top of the chiffonier that would prevent the ring and earbobs from rolling off. The plaintiff got up just before the others left, at about half past six. The witness did not tell him about the jewelry then, nor did she write him about it. After her return home she first had occasion to wear it in October. She asked her husband to bring it from the mill of the company of which he was president, where she supposed he had taken it. She never saw it again, never gave consent to anybody to take it, and knew nothing of its whereabouts. Nothing else was missing from the house, and there were no evidences of any disturbance.

The plaintiff testified to this effect: He placed his keys on the chiffonier as already indicated. In the morning he picked them up and at that time there was nothing there by them. If the jewelry had been there he certainly would have picked it up. He never gave

consent to anyone to take the jewelry. He first knew of its being missing when his wife asked him for it, as she related. A thorough search was made, which was fruitless. He had taken the family silver to the vault at the mill.

The maid gave this testimony: She saw the plaintiff's wife place the jewelry on the chiffonier on top of the keys as narrated by her. She then went to a carnival with her sister, returning between eleven and eleven thirty. She came in through the back porch and did not lock the screen door. She knew nothing as to what became of the jewelry.

Of the couple who were occupying a room in the plaintiff's home, the wife testified that she took care of the house after Mrs. Sowden left for Colorado; that on that morning she straightened up the room where the chiffonier was an did not see the jewelry, with which she was familiar; that in cleaning up she could not have failed to notice the large ring if it had been there. The husband testified he knew nothing about the jewelry.

The cases bearing on the character of evidence sufficient to prove that missing articles were stolen are fully collected in notes in 46 L. R. A., n. s., 562, 567, 568; 41 A. L. R. 846, 851-853; and 44 A. L. R. 471, 472, the last one bringing the annotation to within a year. It is well established that even where a policy insuring against theft requires that the proof of the larceny shall be "direct and affirmative," or even "conclusive," circumstantial evidence may be sufficient. In the second of the notes referred to this language is used:

"It seems that under policies requiring direct and affirmative evidence of the burglary, larceny, or theft, the courts refuse to construe the term 'direct and affirmative' or 'conclusive' evidence in its strict, technical sense, as to do so would render the policy valueless except in the most unusual cases; thus, the fact that the evidence of theft is wholly circumstantial will not defeat a recovery on such policies." (41 A. L. R. 846, 851.)

It is said that even in the absence of any special provision as to the degree or character of proof required "as a rule, no recovery can be had upon policies indemnifying against loss by burglary, theft, or larceny where the evidence merely shows that property covered by the policy is missing." (46 L. R. A., n. s., 561, 567.) That is obviously sound law. If a claimant under a theft insurance policy were to rest his case, so far as concerns this feature of it, upon his testimony that "the insured property has disappeared," he would

of course not be entitled to go to the jury upon the issue whether it had been stolen. But when to the bare fact of disappearance there is added all the known circumstances attending it, stronger reasons usually, and almost necessarily, appear for its being thought due to one cause rather than to another, so that there arises a basis for forming a rational judgment on the subject. And where upon an assembling of all the available information the hypothesis of larceny seems more probable than any other that can be suggested, no reason is apparent why the matter should not go to the jury to be determined on the fair inferences to be drawn from the facts directly established.

In the present case there was direct evidence that Mrs. Sowden left the jewelry on the chiffonier the night before starting for Colorado, the ring being on the bunch of keys and the earbobs beside it, and never saw any of it again. The jurors, aware that memory is fallible, especially in such matters, might think she was mistaken and that probably she later put it in a safer place and forgot it, but certainly no rule of law *required* them to disbelieve her testimony. The plaintiff's statement that in the morning when he picked up his keys there was nothing else beside them was sufficient proof of that fact if the jury accepted it. It followed not merely naturally, but of necessity, that some one had taken the jewelry in the interval. Every person known to have been in the house in the meantime, or to have had a right to be there, was shown not to have touched it, except the two children, and there was evidence they were not tall enough to reach it. The circumstance that the porch door was not fastened readily suggests that a thief may have entered and taken the jewelry without leaving any other trace of his work. There are not many other plausible explanations open. An acquaintance might possibly have entered and borrowed the jewelry or taken it for a joke, but the time that elapsed before the trial in December, 1925, adds to the inherent improbability of such a theory, and is also quite inconsistent with the honest possession of the property by anyone. The likelihood of a somnambulist having concealed it would be plausible enough in fiction, but such an occurrence in real life is hardly sufficiently common to make it a factor here.

We regard this view as harmonizing with most of the cases cited in the notes referred to. *Schindler v. United States Fidelity & G. Co.,* 109 N. Y. S. 723, may seem to have a contrary tendency and is

Sowden v. United States Fidelity & Guaranty Co.

rather an extreme case against the insured. In the report there is little discussion and but a meager statement of facts. A bag of jewelry was placed in a closet in the morning by the plaintiff's wife and by her found missing at night. A servant in the plaintiff's employ was out a part of the afternoon. Whether anyone except the plaintiff's wife testified, and whether anything was shown as to who had access to the place or how entrance might have been made does not appear. A somewhat similar case is *Duschenes v. National Surety Co.,* 139 N. Y. S. 881, where the policy contained a clause:

"The assured shall also produce *direct* and *affirmative* evidence that the loss of the article or articles for which claim is made was due to the commission of a burglary, theft, or larceny; the disappearance of such article or articles not to be deemed such evidence."

In the opinion it was said:          .

"In order to protect itself from claims under the policy for loss of the articles covered by the policy by reason of some other cause than burglary, theft, or larceny, the company has provided that the insured must produce, not circumstantial, but direct and affirmative evidence of the wrong. Parties may be mistaken in their recollection of where they placed a piece of jewelry, but they are not apt to be mistaken in recollection as to matters directly and affirmatively showing a felony, and the defendant could reasonably provide that there could be no recovery unless, in addition to the testimony of the disappearance of the jewelry, the insured should produce testimony of a direct and affirmative kind that there has been a felony." (p. 882.)

The rule as so stated and interpreted would seem to exclude a broken window as evidence tending to show a burglary, on the ground of being circumstantial instead of direct, and to prevent a recovery on the policy in all cases where a thief entered a house, stole property and escaped without being caught or seen.

We cannot agree that a clause such as that used in the policy here sued upon prevents proof of the larceny by wholly circumstantial evidence, or requires the triers of the facts to refuse belief to a statement of a witness as to where property was left. In the most recent reported case available this language is used:

"Plaintiff's policy required that, upon the discovery of any loss, he should give affirmative proof of loss under oath, including a statement containing sufficient evidence of the commission of a burglary, theft, or larceny, to which the loss was due, and his belief as to the time of its occurrence. This requirement as to proof of loss is similar to that stated in *Fienglas v. New Amsterdam Casualty Co.* (Mun. Ct.), 151 N. Y. S. 371, in which the plaintiff obtained judgment upon proof of theft by circumstantial evidence. It is often impossible to obtain direct evidence of the loss of jewelry by theft, and such loss

may be proved by circumstantial evidence. (*Miller v. Mass. Bonding & Ins. Co.*, 247 Pa. 182, 93 A. 320, L. R. A. 1915D, 615.) The plaintiff was not required to prove by direct evidence the theft of the rings; it was enough if he showed circumstances sufficient to justify the inference that they had been stolen. . . .

"The testimony of plaintiff and his wife is direct and positive that the rings were placed in the jewel box. It appears that four other persons had access to the bedroom in which the box was kept. No person was authorized by the plaintiff or his wife to take the rings from the box, and it is not unreasonable to infer that the person who did abstract them did so with a felonious intent. Cases holding the defendant liable for theft on circumstantial evidence are: *Wolf v. Ætna A. & L. Co.*, 183 App. Div. 409, 170 N. Y. S. 787; *Stich v. Fidelity & Deposit Co.* (Sup.) 159 N. Y. S. 712; *Haas v. Fidelity & Deposit Co.*, supra; *Fienglas v. New Amsterdam Casualty Co.*, supra. The three years elapsing between the discovery of the loss of the rings and the date of the trial was a circumstance which might be considered by the jury in deciding whether the rings were mislaid or stolen. After a careful consideration of the evidence, as it does not clearly appear that the decision of the trial justice in denying the motion for a new trial on the ground that the verdict was against the evidence was erroneous, the exception thereto is not sustained." (*McDuff v. General Accident, Fire & Life Assur. Corporation*, [R. I.] 131 Atl. 548, 549.)

2. In the blank furnished by the defendant on which proof of loss was required to be made one of the questions to be answered reads: "[State] the manner in which the (burglary or theft) was committed:" The answer made was "Is not known for sure, articles taken from house." To this had been added, and then stricken out, the words "or at least." The defendant calls attention to this as tending to confirm its view. Whatever bearing the circumstance may have was for the consideration of the jury and trial court in determining the facts.

3. Objection is made to the refusal to give certain instructions asked. For the most part they involve the question already considered and require no further discussion. One of them, however, asked the court to tell the jury that the proof of loss submitted to the defendant was not affirmative proof of theft or larceny and therefore the plaintiff could not recover. The transcript shows this entry at the beginning of the introduction of evidence:

"It is admitted that the proper proofs of loss have been made and notice of the loss has been made. These admissions, however, do not exclude either party from using any of the papers used in the proof of loss or notice of loss for any purpose they see fit to use such papers or notice."

The defendant interprets this as a waiver merely of the time of making proof of loss. We regard it as going beyond that and covering as well the contents. Moreover the proof was written up by

the defendant's agent on blanks prepared by it. The questions seem to have been fairly answered under oath by the plaintiff and his wife within the limits of their information. If at the trial affirmative evidence of larceny was produced—as we hold to be the case—it would be manifestly unfair to set aside the verdict because of any lack of fullness of statement in a proof of loss made up under such circumstances.

4. Complaint is made of the giving of this instruction:

"And so, in this case, if you find from the evidence that it is probable that the jewelry was misplaced or lost, and further find that there is no direct or positive evidence that the jewelry was in fact stolen, then the plaintiff can not recover."

It is urged that this amounted to a submission to the jury of a question of law as to what constituted direct or positive evidence. We think no prejudice could have resulted, particularly in view of other instructions, such as these, which seem quite favorable to the defendant:

"The words, 'affirmative proof,' mean, direct or positive evidence. It means any direct or positive evidence tending to prove a certain fact. . . . If the circumstances can be explained upon any reasonable theory other than the theory that a crime was committed, then such circumstances would not be sufficient to establish the fact that a crime was committed. . . . The mere mysterious disappearance of property insured against theft does not establish the fact that the property was stolen."

The judgment is affirmed.