## M. ZALIK v. EMPLOYERS LIABILITY ASSURANCE CORPORATION, LTD.[1]

February 23, 1934.

No. 29,784.

[1]Reported in 253 N. W. 114.

*Orr, Stark, Kidder & Freeman,* for appellant.

*S. Segall,* for respondent.

*DEVANEY, Chief Justice.*

Action brought by plaintiff as administrator to recover the sum of $200 on a policy of burglary insurance. After a verdict for plaintiff, defendant's blended motion for judgment notwithstanding the verdict or for a new trial having been denied, this appeal is taken.

I. M. Zalik on January 9, 1932, was the proprietor of a cigar and confectionery store at 201 Washington avenue south, a small place of business operated in a single room but 20 feet square. Assisting Mr. Zalik was his son, Moses Zalik, the administrator herein. The owner of the store carried a policy of burglary or robbery insurance with the defendant company. On Saturday, January 9, 1932, I. M. Zalik, the owner, while in charge of the store, was fatally shot. The shooting occurred at about 8:30 p. m. Police officers arriving at the store shortly thereafter found Zalik sitting in a chair. They were told "two fellows came in there to hold him up" and that he was ordered to "stick them up." Zalik died without giving further information.

Sales when made in the store were rung up on a cash register, the money so taken in being thereafter deposited in the bank. Sales as recorded on the cash register tape were checked daily with cash on hand in the cash register. There was testimony that in addition to the money in the cash register, a sum of approximately $200 was kept in a cigar box in a drawer beneath the cash register for the purpose of changing big bills and small checks. Moses Zalik said that he left the store at 8:15 p. m. on the evening of the robbery; that before he left he counted the money in the cigar box and left therein a notation in writing showing the amount to be $200. It was not until Sunday morning that he noticed the $200 was missing. Nothing else had been taken except the notation in the box.

Defendant's assignments of error raise the following questions: (1) Was the fact of the robbery established? (2) Was the exist-

ence of the money alleged to have been taken established? (3) Can the loss be determined from books and accounts kept by assured?

■ Was there a robbery? The deceased just before death told the police that two men came in to hold him up, that they told him to "stick them up." The purpose and the intent was by this statement robbery. The shooting was an unhappy and perhaps unintended incident, which had no part in the plan of the robbers. The perpetrators of the crime came to rob and not to kill. It is no answer for the defendant to say that they may have been frightened away by the shooting and by the fear of apprehension. Having come to rob, and being armed, they did not hesitate to kill to achieve their purpose. It is true that plaintiff has the burden of proving all the material elements in his case, but these necessary facts may be established by circumstantial evidence, a preponderance of the evidence being sufficient. 9 C. J. 1100, says:

"While the mere disappearance of certain articles covered by the policy, without other facts being shown, is not sufficient evidence of theft, and hence is not sufficient to warrant a recovery on the policy, evidence of disappearance is entitled to considerable weight where, in addition thereto, suspicious circumstances warranting a hypothesis of theft are shown."

Here was more than a "mere disappearance" and more than "a hypothesis of theft." As was said in Miller v. Massachusetts B. & I. Co. 247 Pa. 182, 184, 93 A. 320, 321, L. R. A. 1915D, 615:

"To limit the assured's right to recovery to cases where the corpus delicti can be proved by direct testimony, that is, by the testimony of witnesses who saw the actual taking, would make the policy next to valueless."

The facts established in this case are sufficient to warrant a finding of robbery, which within the definition as found in the policy was the felonious and forcible taking of property.

■ It is earnestly urged that there was here no actual taking of property; that the evidence as to the existence of the $200 fund, said to be kept by decedent in the cigar box, was so improbable and

so unworthy of credence as to warrant the trial court in refusing to submit that issue to the jury. We cannot agree. The cash register was unmolested, but there was testimony of the most direct character as to the fact of the $200 being in the cigar box 15 minutes before the fatal shooting and missing the following morning when the son first examined the drawer. Circumstantial evidence would have sufficed; here was direct and positive testimony. Nor is the fact that no check to ascertain the loss was made until the following morning either surprising or significant. Every reasonable test by examination was given the witness as to the loss. Under the proper instructions given by the court below this question was submitted to the jury. Under familiar rules of law, that finding of the jury must stand.

■ Defendant relies chiefly on its claim that plaintiff did not comply with one of the exclusion provisions of its contract which provides that defendant shall not be liable "unless books and accounts are kept by the assured and the loss or damage can be accurately determined therefrom." In this small shop there admittedly was no set of books regularly kept and from which the exact state of the business could be ascertained. Here the cash register tape, the check book and bank book, the unpaid bills and receipts, and the notations in writing in the cash box constituted and were the sum of decedent's "books and accounts." No further or different set of "books and accounts," as far as appears from the record, had ever been kept. The provision of the contract respecting the keeping of "books and accounts" from which the loss might be accurately determined is a valid and binding provision. This so-called bookkeeping clause provides for no particular system of bookkeeping. Necessarily the system and the extent and nature of the books and accounts must differ as the business to which they relate differs. Here was the simplest set of "books and accounts" that it was possible to maintain and still permit the insured to make claim that any "books and accounts" were in fact maintained. Yet it sufficed his simple needs. Defendant, for a period of six years prior to the robbery, knowing of the nature and character of decedent's business, continued the insurance contract.

One of the notations comprising a part of the "books and accounts," to-wit, the written notation in the cigar box, was taken with the money.

In the case of Olson v. Great Eastern Cas. Co. 149 Minn. 353, 354, 183 N. W. 826, 827, almost directly in point, notations (comprising a part of "books and accounts") attached to certain garments were stolen with the garments, and this court held that "it was sufficient if the books were kept in such manner that, with the assistance of those who kept them or understood the system on which they were kept, the amount of purchases and sales could be ascertained, and cash transactions distinguished from those on credit, although it might be slow and difficult to do this." See Liverpool & L. & G. Ins. Co. v. Ellington, 94 Ga. 785, 21 S. E. 1006, and Beaird v. New Jersey P. G. Co. 157 Ill. App. 1.

The notation respecting the amount of money in the cash box, if regularly kept, was a part of the "books and accounts." It was stolen with the money. It was impossible to produce it. Plaintiff offered testimony as to the existence of such a notation made and changed from time to time to show the exact amount of money on hand in the cash box as distinguished from the cash register. The notation so made by Moses Zalik on the night of the robbery, placed in the cash box and therefore a part of the "books and accounts," was testified to without objection. That testimony must stand and does not offend the rule against receiving oral testimony. As was said in Olson v. Great Eastern Cas. Co. 149 Minn. 353, 183 N. W. 826, here was an ascertainment of the loss with "the assistance of those who kept them, or understood the system." As the lower court said here:

"You are not to apply it with any such strictness as that, but were books and accounts kept of such a character that as practical men and women you could determine from them accurately that there had been a loss of substantially the amount claimed in this case?"

The question of the "books and accounts" and their application to the $200 loss and their sufficiency was then submitted to the

jury under proper charge. We will not disturb the jury's finding.

We find that there was ample evidence to sustain the verdict of the jury on the controverted points that there was (1) a robbery, (2) a loss, and (3) that the loss could under the facts in this case be determined from the "books and accounts."

Affirmed.

[1] Reported in 253 N. W. 22.