No. 42,568

FORREST D. FERGUSON, *Appellee*, v. PHOENIX ASSURANCE COMPANY OF NEW YORK, *Appellant.*

(370 P. 2d 379)

 Opinion

filed April 7, 1962. 

*Jack C. Lorenz,* of Council Grove, argued the cause, *Marlin Brown,* of Council Grove, and *George V. Allen,* of Lawrence, were with him on the briefs for the appellant.

*David H. Heilman,* of Council Grove, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action against an insurance company on a Storekeepers Burglary and Robbery Policy for loss of money by *safe burglary.* The question presented on appeal is whether the loss is covered by the provisions of the policy.

The facts have been stipulated and are not in controversy. The plaintiff, Forrest D. Ferguson (appellee), was insured under a "Storekeepers Burglary and Robbery Policy" issued by the Phoenix Assurance Company of New York (defendant-appellant). He operated the Rexall drug store in Council Grove, Kansas. During the night of March 8, 1960, the insured's place of business was broken into by forcing the front door open, as evidenced by tool marks. As a result of the burglary there was actual damage to the premises in the amount of $70; narcotics were taken from a storage drawer from within the premises of the value of $32.59; and money was taken from within the safe in the sum of $433.76.

Before the case was tried the insurance company confessed judgment in the amount of $152.59. This comprised the $70, the $32.59, and $50 for the loss of money from within the safe. The only amount in dispute is the remaining $383.76 taken from the safe.

The safe used in the drug store herein had two doors, the outer one was locked by means of a combination lock and the inner one

by means of a key. Both doors to the safe were locked. In gaining access to the safe the outer door was opened by manipulating the combination thereof, and the inner door was opened by punching out the lock. There were no visible marks upon the exterior of the outer door of the safe to show the use of force or violence in gaining access through this door, but the inner door did disclose marks of force and violence upon its exterior, evidencing the use of tools in gaining access.

The policy of insurance entitled "Storekeepers Burglary and Robbery Policy" limited liability to $1,000 under each of the seven "INSURING AGREEMENTS." Among them is the following:

"IV. Burglary; Safe Burglary

"To pay for loss by safe burglary of money, securities and merchandise within the premises and for loss, not exceeding $50, by burglary of money and securities within the premises."

The policy in chronological sequence then listed the "EXCLUSIONS." The only one having any bearing upon this case reads:

"This policy does not apply:

"(a) to loss due to any fraudulent, dishonest or criminal act by any insured, a partner therein, or an officer, employee, director, trustee or authorized representative thereof, [while working or otherwise and] whether acting alone or in collusion with others; provided, this exclusion does not apply to [kidnapping,] safe burglary or robbery or attempt thereat by other than an insured or a partner therein;"

This exclusion was amended by an attached rider to include the words set forth in the brackets.

The policy then set forth the "CONDITIONS" among which was: "1. Definitions . . . (j) Safe Burglary." The definition of the term "Safe Burglary," however, was amended by a rider attached to the policy. The amended definition, which is substantially identical to the original, reads:

" 'Safe Burglary' means (1) the felonious abstraction of insured property from within a vault or safe, the door of which is equipped with a combination lock, located within the premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, *of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of (a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors,* or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made, if not made through such doors, or (2) the felonious abstraction of such safe from within the premises." (Emphasis added.)

The trial court said there was no question but that a burglary occurred, the money was taken, and the insurance was carried for that particular purpose. It held the provision relied upon by the insurer was "an escape clause" and allowed full recovery under the policy for the money taken from the safe. Judgment was entered for $536.35, as requested in the petition, plus $300 for attorney fees to be assessed as costs against the insurance company. (G. S. 1959 Supp., 40-256.)

Appeal has been duly perfected by the insurance company presenting as the only dispute the construction of the insurance policy in question as it relates to safe burglary.

A study of the policy discloses that if the appellee is entitled to recover the loss must fall within provision No. IV of the "INSURING AGREEMENTS."

The appellant in its answer and at the pretrial of the case denied any liability under the policy for the money taken from the safe. However, just prior to trial the appellant amended its answer and confessed judgment for a sum which included $50 under the second provision of Insuring Agreement No. IV—payment for money taken by burglary within the premises. This, the appellant contends, is the only ambiguous provision in the policy, and the question has been resolved in favor of the insured by the company prior to trial.

The appellant contends the definition of safe burglary in the policy is clear and unambiguous. It says, since entry was made to the safe in question through the doors thereof, and there were no visible marks of force and violence made by tools, explosives, electricity or chemicals upon the exterior of the outer door through which entry was made, the loss was not insured under the plain meaning of the policy.

The appellant argues if the appellee is demanding payment for a loss that was clearly excluded in the contract, then appellee is requesting coverage for which no consideration or premium was paid.

The appellee contends the appellant's interpretation of safe burglary within the terms of the policy is not applicable and is illogical and contrary to the public policy of this state. It is argued the appellee is entitled to recover for the loss as a result of the burglary of his safe, when the facts are that the inner door of the safe was locked by a key and the safe entered by force and violence of which there were visible marks on the exterior of such inner door.

The appellee argues if the insurance company did not intend to pay for loss of money by safe burglary under the facts in this case, it should have had another item under its "Exclusions," stating in substance "that the company will not pay for any loss if a combination to a safe has been worked by manipulation." (See the policy provisions in *Prothro v. Com. Cas. Ins. Co.*, [1942], 200 S. C. 432, 21 S. E. 2d 1; and *Assurance Corp. v. Heller*, [1953], 127 Colo. 64, 253 P. 2d 966.)

It is a generally accepted rule that insurance policies are to be construed in favor of the insured and against the company. This rule, however, is to be invoked only where there exists rational grounds for construction of the policy. That is, the contract must contain provisions or language of doubtful, ambiguous or conflicting meaning, as gathered from a natural interpretation of its language. (*Knouse v. Equitable Life Ins. Co.*, 163 Kan. 213, 181 P. 2d 310; *Sebal v. Columbian Nat. Life Ins. Co.*, 144 Kan. 266, 58 P. 2d 1108; and *Koehn v. Central National Ins. Co.*, 187 Kan. 192, 354 P. 2d 352.) If the language when given its everyday commonly accepted meaning is clear and specific in presenting the subject matter at hand, the objective to be accomplished, the burdens assumed, and the benefits to be enjoyed or received, then the terms of the policy cannot be said to be doubtful of meaning or conflicting in terms. Under these circumstances, courts are not at liberty to indulge in a construction that would give an unnatural meaning to the language in order to accomplish results that could not be shown to have been in the minds of the parties. (*Knouse v. Equitable Life Ins. Co.*, supra; *Koehn v. Central National Ins. Co.*, supra; and authorities accumulated in these cases.)

Where an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. (*Watkins v. Metropolitan Life Ins. Co.*, 156 Kan. 27, 131 P. 2d 722; and *Movitz v. New York Life Ins. Co.*, 156 Kan. 285, 133 P. 2d 89.)

We have been cited to no Kansas cases, nor has our research disclosed any, on conditions placed in a burglary or safe burglary policy of insurance, similar to those in the instant case. It must be conceded, as the appellant contends, that restrictions have been recognized in a robbery policy. In *Security State Bank v. Royal Indemnity Co.*, 127 Kan. 230, 273 Pac. 430, the policy of insurance required the insured to provide a guard for each custodian while

conveying insured property outside the premises as a precaution to prevent loss. The insured failed to send a guard with a messenger who was robbed, and sought to recover. The court said:

". . . We are of the opinion that the failure of the plaintiff to comply with the provision of the policy with respect to sending a guard with the messenger increased the risk of loss by robbery and may reasonably be said to have constituted a direct cause of the loss in question. . . ." (p. 231.)

This condition in the policy was recognized by the court as *substantive* and required fulfillment before liability attached.

It is not uncommon for insurance companies to include in theft or burglary insurance policies provisions restricting their liability to cases where the insured produces some form of specified evidence that the loss was due to theft or burglary. The reason for such restrictions, quite obviously, is to protect the companies from what are commonly known as "inside jobs," and from frauds that would inevitably result, but for such protection. (*United Sponging Co. v. Preferred Acc. Ins. Co.* [1916], 161 N. Y. S. 309, 97 Misc. 396, aff'd, 179 App. Div. 884, 165 N. Y. S. 1116.)

Provisions of this type are the subject of an extended annotation in 169 A. L. R. 224, where numerous cases are accumulated and discussed. Generally speaking, it is said, there are three different kinds of clauses by which insurance companies attempt to achieve this result: (1) A provision to the effect that the evidence produced by the insured must be "direct," "affirmative," or "conclusive;" (2) a stipulation that the mere disappearance of the insured article shall not be deemed evidence of burglary or theft; and (3) a provision specifying that there be "visible marks" or "visible evidence" of the use of force or violence.

These clauses are inserted in the policies for the protection of the insurance company and they clearly favor the insurer over the insured.

The clause with which the court is concerned in the instant case specifies that there be "visible marks" upon the exterior of all doors of a safe, if entry is made through such doors.

The first question to be determined is whether this clause is designed to set forth a rule of evidence, or whether it is designed to set forth a rule of substantive law—a condition precedent limiting the liability of the insurance company.

It cannot be said the language used *to define "safe burglary,"* as heretofore quoted, is ambiguous. To answer the foregoing ques-

tion we must interpret this provision by making a careful study of the language used and the comparative position of this language in the policy itself.

It is to be noted the indemnifying provision, "Insuring Agreement No. IV.," imposes no restriction or limitation. By this provision the company, under a policy entitled "Storekeepers Burglary and Robbery Policy," agrees "To pay for loss by safe burglary of money, securities and merchandise within the premises." Furthermore, no limitation or restriction is to be found among the "EXCLUSIONS," except the loss occasioned by "inside jobs"—safe burglary committed by the insured or a partner. Thereafter, as a *condition* in the policy, safe burglary is defined as the felonious abstraction of insured property from within a safe located within the insured premises by a person *making felonious entry into such safe by actual force and violence.* It requires that the door of such safe be equipped with a combination lock and that all doors thereof be duly closed and locked by all combination locks thereon.

There is no provision in the policy that force and violence are necessary to gain entry through each of the doors to the safe. The crucial clause here under consideration reads: "of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of ( *a* ) all of said doors." The term "force and violence" used in this clause refers to the "actual force and violence" used in "making *felonious entry into*" *the safe.* The recital that there be *visible marks* upon the exterior of all of the doors to the safe has reference only to *evidence* of the force and violence used in making the felonious entry into the safe. In other words, the substantive condition of the proviso is that entry into the safe be made by actual force and violence. The further condition that there be visible marks upon the exterior of all doors to the safe, if entry is made through such doors, is merely evidentiary to show an entry into the safe by actual force and violence.

The appellant relies upon *Assurance Corp. v. Heller,* supra, which it describes as being on all fours with the case at bar. The Colorado Supreme Court held where the provisions of a policy are couched in plain and unambiguous language and do not contravene some principle of public policy, the court has no right to relieve one of the parties to the contract from its disadvantageous terms by a forced construction or interpretation of its provisions. There the facts as to the safe burglarly were identical to the facts in the

case at bar, but several distinctions must be noted regarding the policy of insurance. The indemnifying provision itself set forth:

" 'Coverage I—Safe Burglary

" '1. For all loss by burglary of money, securities and merchandise from within that part of any safe or vault, to which the insurance hereunder applies, by any person or persons making felonious entry into the insured part of such safe or vault by actual force and violence (of which force and violence there shall be visible marks made by tools, explosives, electricity, gas or chemicals, upon the exterior of (*a*) all of the doors of the safe or vault if entry is made through such doors, or (*b*) the top, bottom or walls of the safe or vault, through which entry is made if not made through such doors) while all the doors of such safe or vault are duly closed and locked by combination or time lock and while such safe or vault is located in the premises, or elsewhere after removal therefrom by burglars.' " (pp. 66, 67.)

Special conditions applicable to "Coverage I" were the following:

" '10. Entry into Vault, Safe or Chest. The Company shall not be liable if the insurance is limited to a chest inside a safe or a safe inside a vault unless both the chest and the safe or the safe and the vault, as the case may be, shall have been entered in the manner specified under Coverage I.

" '11. Exclusions. The Company shall not be liable for loss or damage (1) effected by opening the door of any vault, safe or chest by the use of a key or by the manipulation of any lock; . . .' " (p. 67.)

In the opinion the court said the paragraph in Coverage I was "plain and unambiguous; couched in ordinary terms—such that a reasonably intelligent person could readily understand the same. Under these circumstances, *the exclusion clause, supra, must be given the meaning which a person of ordinary intelligence would attach to it.*" (p. 67.) (Emphasis added.)

The Colorado court noted that counsel had not called to its attention any decision wherein the policy contained the exact Insuring Agreement or special conditions couched in the exact language contained in the policy there under consideration, nor had the court found any such decision.

Similarly in *Prothro v. Com. Cas. Ins. Co.,* supra, the *indemnifying* provision in a policy of burglary insurance had language substantially identical to that in the definition of "safe burglary" herein, but there was an *exclusion* that the company " 'shall not be liable for loss or damage . . . (6) effected by opening the door of any vault, safe or chest by use of a key or by the manipulation of any lock.' " (p. 434.)

The issue in the case concerned the use of force and violence on the outside door of the safe, which was equipped with a combina-

tion lock. There were signs of physical force and violence upon the exterior of the outer door. Evidence was presented that the entry through this outer door was not made by force and violence. The case turned upon an instruction to the jury which was affirmed on appeal, holding there was "no provision in the policy that the entry shall be made exclusively by force and violence." (p. 436.) In the opinion the court said:

"The policy properly interpreted must be held to mean that if actual force and violence is used in connection with the opening of a safe, then even though the safe was not opened by such actual force and violence alone, the policy provision applies, provided the actual force and violence were contributing factors to the opening of the safe, and without which the safe could not have been opened." (p. 436.)

In *Paramount Publix Cor. v. Travelers Ind. Co.,* [1934], 49 Ga. App. 1, 173 S. E. 873, the *indemnifying provision* in a policy of burglary insurance had language substantially identical to that in the definition of "safe burglary" herein, but the report does not mention an exclusion. There a safe with two doors, as here, was burglarized. The lock on the inner door was battered off and there were marks indicating that the lock on the inner door had been forcibly hammered and battered to effect an entry into the safe where the money was. The burglars sawed the hinges on the outer door of the safe in two, and there were scratches and forcible marks on the outer door where the hinges had been sawed and cut for the purpose of entering the safe. The sawing of the hinges on the outer door of the safe was not of itself sufficient to effect an entry into the safe, in that the outer door contained certain bolts extending on both sides of the door into the safe which would have prevented the opening of the door of the safe, even though the hinges were sawed off, unless the combination of the safe was worked.

An instruction by the trial court virtually directed a verdict for the defendant, compelling the jury to find for the insurance company if entry into the safe could not have been made but for the working of the combination to the safe, notwithstanding the use of force and violence. This instruction was held erroneous. In commenting the court said such a strained construction of the policy would tend to practically defeat the object of the insurance and would make such a policy of burglary insurance almost useless.

Two other cases in which action was brought against an insurer on a policy of burglary insurance having a provision substantially identical to the definition of "safe burglary" herein are *Inglis et ux*

*v. Gen. Casualty Co.* [1957], 211 Or. 116, 316 P. 2d 546; and *Old Colony Ins. Co. v. Moskios* [1956], 209 Md. 162, 120 A. 2d 678. In each of these cases the language in question was set forth as a part of the insuring or indemnifying clause.

In the *Inglis* case there was no question but that the safe was opened and money stolen, but the only evidence offered was that there were scratches upon the outer surface of the door of the safe when the safe was found open. There was no evidence that these scratches contributed in any manner to the opening of the safe, but quite to the contrary. The report gives no indication that the safe had an inner door. It was held the evidence did not bring the burglarization of the safe within the insuring terms of the policy so as to create liability according to its terms. The court said this is not a policy which insured against mysterious disappearances, nor does it cover manual operation of the safe's combination in the absence of visible evidence of the use of force thereon. It further said the insuring clause of the contract required entry into the safe by force and violence, and "as a result of the force and violence there is *visible evidence,* upon the exterior doors or outer walls of the safe, of that force and violence which either effected the entry or contributed to effecting the entry." (pp. 118, 119.) (Emphasis added.)

In the *Moskios* case the issue also concerned the use of force and violence. The jury was instructed they must find that some mark of violence was " 'left on the outside door of the safe not the inside door, but the outside door on which the combination operated.' " (p. 165.) *No objection* was made to this part of the charge, nor was it contended that the force used on the inside door alone was sufficient for recovery. *This became the law of the case.*

The court held the policy did not stipulate that entry to the safe must be effected "solely" or "exclusively" by actual force and violence of which there were visible marks made by tools.

In *McCoy Grocery Company v. Travelers Indemnity Company,* [1960], 101 Ga. App. 638, 114 S. E. 2d 924, a similar provision in a policy of burglary insurance was the subject of an action. Plaintiff's evidence indicated there were visible marks of actual force and violence made by tools upon the exterior door to the safe, which the court said "was the only door, under the evidence, upon which there was *a combination lock,* as contemplated by the policy." (p. 639.) This was held to be sufficient evidence to go to the

jury on the question of the defendant's liability for the money allegedly stolen from the safe. The summary opinion does not give much assistance.

All of the foregoing cases are of assistance but have characteristics which distinguish them from the case presently before the court, either upon the facts giving rise to the safe burglary, or upon the specific provisions of the policy of insurance, or upon the issues presented.

The appellee relies upon cases involving burglary or theft policies of insurance containing the "visible marks" requirement in a clause which requires only that the visible marks be *"upon"* the assured's safe, or directly upon the "exterior" or the "outside" of the assured's safe or vault. (*Fidelity & Casualty Co. v. Sanders*, 32 Ind. App. 448, 70 N. E. 167; *Moskovitz v. Travelers Indemnity Co.*, 144 Minn. 98, 174 N. W. 616; *Rosenbach v. Fid. & Cas. Co.*, 204 Mo. App. 145, 221 S. W. 386; *Goldman v. New Jersey Fidelity & Plate Glass Ins. Co.*, [K. C. C. A.], 183 S. W. 709; *Bruner Co. v. Fidelity & Casualty Co.*, 101 Neb. 825, 166 N. W. 242; *Maryland Casualty Co. v. Bank of Murdock*, 76 Neb. 314, 107 N. W. 562; *Grayson v. Maryland Casualty Co.*, 100 Neb. 354, 160 N. W. 85; *Fidelity & Casualty Co. of New York v. First Bank of Fallis*, 42 Okla. 662, 142 Pac. 312; and *National Surety Co. v. Chalkey*, [Tex. Civ. App.], 260 S. W. 216; see, also, 29A Am. Jur., Insurance, § 1336, p. 452; 45 C. J. S., Insurance, § 886, at p. 956; 169 A. L. R. 244; 54 A. L. R. 470; 44 A. L. R. 473; and 41 A. L. R. 855.) These cases are not particularly helpful in resolving the issue presented by the provision here in question. Many cases of this type say that such provision is not quite clear, or that it is ambiguous, and resolve the doubt in favor of the assured. Others hold to the contrary.

As we interpret the "Storekeepers Burglary and Robbery Policy" of insurance presently before the court, the "visible marks" clause imposes a rule of evidence upon the assured to establish that entry was made into the safe by actual force and violence. Whether such force and violence need be only a contributing factor in making entry into the safe is not a point at issue. On the admitted facts here confronting the court actual force and violence were used in making entry into the appellee's safe and there were visible marks of such force and violence upon the exterior of the inner door, but there were no marks of force or violence upon the exterior of the outer door which was opened by manipulating the combination.

The question then resolves into whether an insurance company, in order to protect itself from "inside jobs" and frauds, may impose a rule of evidence which is binding upon the assured by a provision in the policy.

It is a well-established rule of insurance contracts that the insurance carrier can and must be able to select the risks it insures. But a provision intended to determine the character of evidence necessary to show liability is another matter. The cases generally hold, if the parties to an insurance contract adopt a provision which contravenes no principle of public policy and contains no element of ambiguity, the courts have no right to relieve one of them from disadvantageous terms, which he has actually made, by a process of interpretation. Upon this principle the insurance carrier has a perfect right, if it sees fit, to require proof even of so-called evidentiary facts as an indispensable basis for recovery. Where the provision is not in contravention of public policy and not ambiguous, the only inquiry can be whether the parties have assented to the incorporation in their agreement of a provision which clearly calls for such evidentiary proof. A leading case on this point is *Rosenthal v. American Bonding Co.* [1912], 207 N. Y. 162, 100 N. E. 716, 46 L. R. A. (n. s.) 561.

It is no longer subject to question that insurance is vitally affected with the public interest. (*Koehn v. Central National Ins. Co.,* 187 Kan. 192, 354 P. 2d 352.)

In *Sowden v. United States Fidelity & Guaranty Co.,* 122 Kan. 375, 252 Pac. 208, a clause in a policy insuring against loss by theft required that *affirmative proof* must be made of the larceny to warrant a recovery. It was held this clause did not prevent the establishment of that fact by purely circumstantial evidence. The practical effect of this decision seems to be that the court gave relatively little weight to the added requirement concerning evidence, in order not to exclude recovery on an obviously justifiable claim. (See, *Leader Clothing Co. v. Fidelity & Casualty Co. of N. Y.* [U. S. C. A., 10th Cir., 1956], 237 F. 2d 7; and *Aetna Casualty & Surety Co. v. Reliable Auto Tire Co.* [C. C. A., 8th Cir., 1932], 58 F. 2d 100.)

We hold that where a rule of evidence is imposed by a provision in an insurance policy, as here, the assertion of such rule by the insurance carrier, beyond the reasonable requirements necessary to prevent fraudulent claims against it in proof of the substantive

conditions imposed by the policy, contravenes the public policy of this state. This becomes apparent when the statement of the rule in the policy itself, or its assertion by the insurance carrier, is designed to prevent recovery on an obviously justifiable claim.

On the facts in this case money was taken from the assured's safe by an admitted entry into the safe by actual force and violence, which was evidenced by visible marks upon the inner door of the safe. Under these circumstances the assertion by the insurance carrier of the evidentiary requirement, that there be visible marks of force and violence upon the exterior of the outer door, is obviously designed to defeat recovery on a just claim under the policy which insured the felonious abstraction of money from within the safe, by a person making felonious entry into such safe by actual force and violence, where both doors of the safe were duly closed and locked.

Had the insurance carrier desired to exclude loss by safe burglary where the combination of the outer door is worked by manipulation, such provision should have been incorporated under the "EXCLUSIONS" in the policy. The appellant asserts in its brief that the appellee is demanding payment "for a loss that clearly was *excluded* in the contract," (Emphasis added) thus recognizing the need for an *exclusion* in the policy to support its contention, but without actually having made such exclusion in the policy.

The judgment of the lower court is affirmed.

PRICE, J., dissenting: Concededly, this policy of insurance contains a restrictive "safe burglary" clause—just as many other types of policies contain restrictions. In this day and age a person gets just about what he pays for—whether it be insurance protection or anything else—and that is what happened here. The clause in question is *plain, clear* and *unambiguous,* and, such being the case, should be enforced according to its terms in harmony with the universal rule pertaining to insurance contracts. In my opinion this court has no business making another contract for the parties—its function is to enforce the contract as made. (*Knouse v. Equitable Life Ins. Co.,* 163 Kan. 213, 216, 181 P. 2d 310; *Blair v. Automobile Owners Safety Ins. Co.,* 178 Kan. 615, 290 P. 2d 1028.)

I would reverse the judgment.